775 P.2d 1210

**STATE of Idaho, Plaintiff–Respondent,**

v.

**James Ralph WOOLERY,
Defendant–Appellant.**

No. 17224.

Supreme Court of Idaho.

June 9, 1989.

Gunn & Hoff, Caldwell, for defendant-appellant. Renae Hoff, argued.

Jim Jones, Atty. Gen. and Myrna A.I. Stahman, Deputy Atty. Gen., for plaintiff-respondent. Myrna A.I. Stahman, argued.

HUNTLEY, Justice.

This case arises as the result of an automobile accident that occurred on January 31, 1987, at the intersection of Franklin Road and Star Road located in Canyon County, Idaho. At approximately 10:30 p.m., a pickup driven by Woolery ran a stop sign at a very high speed and crashed into an automobile driven by Christopher Price. Price's passenger, Carol Francis Price, was fatally injured in the accident and Christopher Price was seriously injured. Woolery was alone in his vehicle and received head and chest injuries. Woolery states that he appeared "shook up" immediately after the accident.

Woolery states that he had a heart condition for which he had taken medication immediately prior to the accident. He tes-

tified that he had no recall of the accident itself and that he went into shock upon arrival of the paramedics at the accident scene. Because Woolery was injured in the collision, he was transported to the Mercy Medical Center emergency room. According to the State, the emergency room doctor who treated Woolery was of the opinion that Woolery was intoxicated.

Officer Rowe, the deputy sheriff who arrived at the scene of the accident at approximately 10:35 p.m., followed the ambulance containing Woolery to Mercy Medical Center. Upon arrival, Officer Rowe told the doctor that he needed a blood test sample from Woolery, but he was forced to wait approximately ten minutes so the emergency room personnel could examine appellant. The test of Woolery's blood, which was drawn approximately one hour after the accident, revealed a .16 blood alcohol content. Woolery argues that the blood sample was taken by Officer Rowe without investigation of the accident scene, without speaking with the Prices, (since they were incommunicado), without asking one single question of Woolery regarding the accident and without informing Woolery of his statutory right of refusal or opportunity for independent testing.[1]

1. **Idaho Code § 18–8002. Test of driver for alcohol concentration.**—(1) Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to an evidentiary test for concentration of alcohol, drugs or other intoxicating substances as defined in section 18–8004, Idaho Code, provided that such test is administered at the request of a police officer having reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle while under the influence of alcohol, drugs or of any other intoxicating substances.

(2) Such person shall not have the right to consult with an attorney before submitting to an evidentiary test for concentration of alcohol, drugs or other intoxicating substances.

(3) At the time an evidentiary test for concentration of alcohol, drugs or other intoxicating substances is requested, the person shall be informed that if he refuses to take the test:

(a) His license will be seized by the police officer and a temporary permit will be issued; provided, however, that no peace officer shall issue a temporary permit pursuant to this section to a driver whose license or permit has already been and is suspended or revoked because of previous violations:

(b) He has the right to request a hearing within seven (7) days to show cause why he refused to take the test;

(c) If he does not request a hearing or does not prevail at the hearing, his license will be suspended absolutely for one hundred eighty (180) days; and

(d) After submitting to the test he may, when practicable, at his own expense, have additional tests made by a person of his own choosing.

(4) If the motorist refuses to take the evidentiary test after the information has been given in accordance with subsection (3) above:

(a) His license or permit shall be seized by the police officer and forwarded to the court and a temporary permit shall be issued by the police officer which allows him to operate a motor vehicle until the date of his hearing, if a hearing is requested, but in no event for more than thirty (30) days; provided, however, that no peace officer shall issue a temporary permit pursuant to this section to a driver whose license or permit has already been and is suspended or revoked because of previous violation;

(b) A written request may be made within seven (7) calendar days for a hearing before the court; if requested, the hearing must be held within thirty (30) days of the seizure unless this period is, for good cause shown, extended by the court for one (1) additional thirty (30) day period. The court, in granting such an extension, may, for good cause shown, extend the defendant's temporary driving privileges for one (1) additional thirty (30) day period. The hearing shall be limited to the question of why the defendant did not take the test, and the burden of proof shall be upon the defendant; the court shall suspend all his driving privileges immediately for one hundred eighty (180) days unless it finds that the police officer did not have probable cause to stop and request him to take the test or that the request violated his civil rights;

(c) If a hearing is not requested by written notice to the court concerned within seven (7) calendar days, upon receipt of a sworn statement by the police officer of the circumstances of the refusal, the court shall suspend his driving privileges for one hundred eighty (180) days, during which time he shall have absolutely no driving privileges of any kind; and

(d) After submitting to the test at the request of the police officer, he may, when practicable, at his own expense, have additional tests made by a person of his own choosing. The failure or inability to obtain an additional test or tests by a person shall not preclude the admission of an evidentiary test for alcohol concentration taken at the direction of the police officer unless the additional test was denied by the police officer.

(5) Any suspension of driving privileges under this section shall be a civil penalty separate and apart from any other suspension imposed for a violation of other Idaho motor vehicle

Woolery moved to suppress the blood alcohol test results because he had not consented to the blood test. An amended motion to suppress was subsequently filed, adding as a basis for suppression the fact that the State did not request Woolery to submit to an evidentiary test. At hearing, the State stipulated that appellant was not provided with the advisory rights required by I.C. § 18–8002 when the blood was removed from him. Officer Rowe later testified that he was the officer requesting the blood alcohol content test, that he was present when it was taken and that the appellant was not under arrest when his blood was involuntarily drawn from him. The court took the issue under advisement and thereafter issued its Memorandum Decision and Order denying Woolery's motion to suppress. Woolery was convicted of all counts.

The issue on appeal is whether the trial court erred in admitting appellant's blood alcohol content test results either because the officer requesting such test did not have reasonable grounds to administer the test or because appellant was not informed of the rights accorded him pursuant to I.C. § 18–8002.

In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court was presented with the issue of whether the results of a test showing the alcohol content of the blood of a driver were properly admitted into evidence where the driver refused to consent to the test after being involved in an automobile accident, and where the officer had ample justification for concluding that the driver was under the influence. The *Schmerber* court explained its resolution of the case as follows:

> We begin with the assumption that once the privilege against self incrimination

has been found not to bar compelled intrusions into the body for blood to be analyzed for alcohol content, the fourth amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner. In other words, the questions we must decide in this case are whether the police were justified in requiring petitioner to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant fourth amendment standards of reasonableness.

384 U.S. 757, 768, 86 S.Ct. 1826, 1834.

■■■ The taking of a blood alcohol content test is a seizure within the context of the fourth amendment to the United States Constitution. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *State v. Curtis*, 106 Idaho 483, 680 P.2d 1383 (Ct.App.1984); *State v. Turner*, 94 Idaho 548, 494 P.2d 146 (1972). Any warrantless search or seizure of a citizen is presumptively unreasonable unless it falls within certain specific and well delineated exceptions. *State v. Harwood*, 94 Idaho 615, at 617–18, 495 P.2d 160 at 162 (1972); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). When a warrantless search or seizure is challenged by defendant, the burden is on the prosecution to show that evidence seized falls within a recognized exception to the warrant requirement. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826; *State v. Harwick*, 94 Idaho 615, 495 P.2d 160 (1972); *State v. Curtis*, 106 Idaho 483, 680 P.2d 1383 (Ct.App.1984). In the instant situation, the destruction of the evidence by metabolism of alcohol in the blood provides an inherent exigency which justifies the warrantless search. The relevant ques-

---

codes or for a conviction of an offense pursuant to this chapter, and may be appealed to the district court.

(6) No hospital, hospital officer, agent, or employee, or health care professional licensed by the state of Idaho shall be held liable in damages in any civil proceeding for a cause of action based upon assault, battery or false imprisonment, or be subject to prosecution under chapter 9 or 29, title 18, Idaho Code, for any act

arising out of administering an evidentiary test for alcohol concentration at the request of a police officer in the manner described by this section.

(7) "Actual physical control" as used in this section, shall be defined as being in the driver's position of the motor vehicle with the motor running or with the motor vehicle moving.

(8) Any written notice required by this section shall be effective upon mailing.

tions under *Schmerber* therefore are whether there was sufficient justification for ordering the test and whether the test was conducted in a reasonable manner.

■ Officer Rowe was justified in requiring Woolery to submit to the blood test and the means and procedures employed in taking his blood were reasonable. The circumstances of the accident, including Woolery's speeding and having failed to stop at the stop sign, together with the treating physician's opinion of intoxication, satisfy the required probable cause to request the test. There is no allegation that the procedure was unreasonably performed.

Any person who drives or is in actual physical control of a motor vehicle in this state is deemed to have given his consent to an evidentiary test for concentration of alcohol, drugs or other intoxicating substances as defined in I.C. § 18–8004, *providing* that such test is administered at the request of a police officer having reasonable grounds to believe that the person has been driving or in actual physical control of a motor vehicle while under the influence of alcohol, drugs or of any other intoxicating substances. Idaho Code § 18–8002 (*supra* n. 1).

■ We now turn to Woolery's argument that the test results should have been excluded because the state did not request the test, Woolery did not consent to the test and Officer Rowe did not advise Woolery of his rights pursuant to I.C. § 18–8002. In order to provide blood alcohol content test guidelines for the courts and police of this state, the legislature enacted I.C. § 18–8002, which provides in pertinent part:

. . . . .

(3) At the time an evidentiary test for concentration of alcohol, drugs or other intoxicating substances is requested, the person *shall* be informed that if he refuses to take the test: (a) his license will be seized by the police office and a temporary permit will be issued; . . . (b) he has the right to request a hearing within seven (7) days to show cause why he refused to take the test; (c) if he does

not request a hearing or does not prevail at the hearing, his license will be suspended absolutely for one hundred eighty (180) days; (d) after submitting to the test he may, when practicable, at his own expense, have additional tests made by a person of his own choosing.

Idaho Code § 18–8002 (emphasis added). At the time an evidentiary test is requested, the person must be informed as provided in the statute. In the instant case, it is irrefutable that Woolery's blood alcohol content test was taken without notice or advisement of his right to refuse.

Prior to the enactment of I.C. § 18–8002, courts in Idaho had consistently ruled there was no general constitutional right to refuse to take a blood alcohol test. Woolery submits that the language contained in I.C. § 18–8002, being mandatory, required Office Rowe to inform him that he had a right to refuse the test along with the other mandated requirements.

The State submits that I.C. § 18–8002(3) does not create a statutory right to refuse to submit to an evidentiary test to determine the alcohol content of a driver's blood and that whether or not such statutory right has been created, failure to comply with the procedures set forth in I.C. § 18–8002(3) does not require suppression of constitutionally obtained evidence. Finally, the State argues that Idaho Code § 18–8002 does not apply to aggravated driving under the influence or vehicular homicide prosecutions.

As explained by the Wisconsin Supreme Court in *State v. Zielke*, 137 Wis.2d 39, 403 N.W.2d 427 (1987), "the implied consent law is an important weapon in the battle against drunk driving in this state. Neither the law, its history nor common sense allows this court to countenance its use as a shield by the defense to prevent constitutionally obtained evidence from being admitted at trial." 403 N.W.2d 427, 434.

The South Dakota Supreme Court ruling in *State v. Buckingham*, 90 S.D. 198, 240 N.W.2d 84 (1976), that noncompliance with the implied consent statutes rendered the blood sample and test results inadmissible in a driving while intoxicated manslaughter

prosecution, was overruled just one year later in *State v. Hartman*, 256 N.W.2d 131 (S.D.1977). The court explained:

> The *Buckingham* decision was without the benefit of argument from the state on the question of whether use of the "exclusionary rule" was necessary where there is a violation of the implied consent statutes. Upon further consideration, this court feels that it is necessary to modify the *Buckingham* decision.... Our consideration of the implied consent statutes must be prefaced upon the United States Supreme Court's decision in *Schmerber v. California* [citations omitted] ... The exclusionary rule is a judicially created means of protecting the rights of citizens under the Fourth Amendment and Art. VI, § 11 of the South Dakota Constitution as a deterrent to unlawful police conduct. However, evidence obtained in violation of statutory rights is not inadmissible per se unless the statutory rights are of constitutional proportions or there exists no other method of deterring future violations of the rights which the legislature has granted to its citizens.

*State v. Hartman*, 256 N.W.2d 131, 134–135. In holding that the results of the blood test were admissible, the court explained that despite the fact the legislature created a specific right of a driver to refuse to submit to a test to determine the alcohol content of his blood, failure to comply with the procedure as set forth in the implied consent statutes does not require suppression of the test results as long as the testing procedure complied with the driver's constitutional rights.

The Idaho Legislature has acknowledged a driver's *physical ability to refuse* to submit to an evidentiary test, but it did not create a *statutory right* for a driver to withdraw his previously given consent to an evidentiary test for concentration of alcohol, drugs or other intoxicating substances.

Importantly, the pre–1983 statute, I.C. § 49–352, covering implied consent to extract blood for a blood alcohol test, stated: "If such person having been placed under arrest and having thereafter been request-ed to submit to such chemical test refuses to submit to such chemical test the test shall not be given but the department shall suspend his license or permit to drive...." The 1984 legislature repealed I.C. § 49–352, the legislative precursor of § 18–8002, and adopted § 18–8002 as a part of the new chapter 80 of title 18. In addition to maintaining the pre–1983 implied consent language and the 1983 deletion of the language just discussed, this enactment added a section making it clear that a driver does not have the right to consult with an attorney before submitting to an evidentiary test. The state submits that the elimination of the statutory provision that the test shall not be given if it is refused, the continued use of the pre–1983 implied consent language, the addition of a specific statutory provision making it very clear that a driver does not have a right to consult with an attorney before submitting to the evidentiary test, along with the statement of purpose enacted as a part of the 1983 Act, reflect the legislative "get tough" policy. This legislative "get tough" policy did not include the creation of a statutory right for a driver to refuse to submit to an evidentiary test requested by an officer who has reasonable cause to believe that such driver is under the influence.

The Oregon Supreme Court in *State v. Newton*, 291 Or. 788, 636 P.2d 393 (1981), explained that the concept of implied consent is a statutory fiction which, at first, appears to be theoretically contradictory.

> The contradiction disappears, however, when it is realized that the words "consent" and "refusal" are not used as antonyms, because they are not used in the same sense. "Consent" describes a legal act; "refusal" describes a physical reality. By implying consent, the statute removes the *right* of a licensed driver to lawfully refuse, but it cannot remove his or her *physical power* to refuse. As another court put it:
>
> > The obvious reason for acquiescence in the refusal of such a test by a person who as a matter of law is "deemed to have given his consent" is to avoid the violence which would often attend forcible tests upon recalcitrant inebriates.

It is firmly established that a drunken driver has no *right* to resist or refuse such a test [citations omitted]. It is simply because such a person has the *physical power* to make the test impractical, and dangerous to himself and those charged with administering it, that it is excused upon an indication of his unwillingness.... *Bush v. Bright*, 264 Cal.App.2d 788, 790, 792, 71 Cal.Rptr. 123 at 125 (1968) (original emphasis).

Thus refusal as contemplated by the statute is something other than withholding of consent because consent is legally implied. It is a refusal to comply with the consent which has already been given as a condition of a license to drive. The purpose of a warning of license suspension following a refusal ... is to overcome an unsanctioned refusal by threat instead of force. It is not to reinstate a right to choice, but rather to nonforcibly enforce the driver's previous implied consent.

636 P.2d 393 at 397–398 (original emphasis). See also *State v. Hoehne*, 78 Or.App. 479, 717 P.2d 237 (1986); *State v. Spencer*, 305 Or. 59, 750 P.2d 147 (1988); *Pears v. State*, 672 P.2d 903 (Alaska App.1983), *rev'd on other grounds*, 698 P.2d 1198 (Alaska 1985); *Wirz v. State*, 577 P.2d 227 (Alaska 1978).

The Idaho Legislature has not created a statutory right to refuse to submit to an evidentiary test to determine a driver's blood alcohol level. It is difficult to believe that the Idaho Legislature would provide an individual with the statutory right to prevent the state from obtaining highly relevant evidence when a law enforcement officer has reasonable cause to believe that individual has committed a crime—whether it would be driving under the influence, vehicular manslaughter, sale of controlled substances, or murder. If the driver's constitutional right to be free from unreasonable searches and seizures is complied with, the state should not be prevented from obtaining such relevant evidence as the alcohol content of the driver's blood.

Idaho Code § 18–8002 is devoted entirely to the administrative, or civil, suspension of the license of a driver. This section does not in any way discuss criminal offenses related to driving under the influence of alcohol. Rather, it sets forth the administrative procedures the legislature established in its attempt "to restrict or control the use of the highways by those persons who cannot or will not conform their actions to the accepted standards of civilized behavior." Statement of Purpose, 1983 Idaho Session Laws, chapter 145, § 1, p. 368. The legislature acknowledged that some individuals refuse to comply with their previously granted consent to submit to an evidentiary test. Rather than condone a physical conflict, the legislature provided for the administrative revocation of the license of an individual who refuses to comply with his previously given consent. Such legislative acknowledgment was not meant to hamstring the ability of law enforcement to properly investigate and obtain evidence of serious crimes committed by those individuals who have chosen to drink and then drive.

In *State v. Thompson*, 207 Mont. 433, 674 P.2d 1094 (1984), the court held that the implied consent prohibition against nonconsensual extractions of blood samples does not apply to a prosecution for negligent homicide. This holding was based on (1) the legislative intent discernible from the wording of the Montana implied consent statute; (2) how similar implied consent laws have been interpreted in other jurisdictions; and, (3) the fact that suspension of the driver's license is simply an insufficient penalty for refusing to submit to an evidentiary test when there has been a death caused by the drinking driver. In *Redus v. State*, 398 So.2d 757 (Ala.Cr.App. 1981), a prosecution for second degree murder arising from an automobile accident, the court held that failure to inform a nonconsenting motorist of the consequences of his refusal to submit to an evidentiary test only affects the validity of the revocation of his driver's license.

For the driver who has been involved in an accident which causes either serious injury or death, the state must have the usual authority to investigate and collect evidence which exists in any other felony investigation. Thus, a driver's refusal to

peacefully submit to an evidentiary test should not preclude law enforcement from making a probable cause seizure of his blood. In *Schmerber,* the United States Supreme Court recognized that a warrantless seizure of the blood of a driver, as long as probable cause exists and the withdrawal of the blood is done in a reasonable fashion, does comply with the provisions of the fourth amendment. Thus, where probable cause exists and the evidentiary test was conducted in a reasonable manner, whether or not the officer complied with the provisions of I.C. § 18-8002(3), the results of the evidentiary test should be admissible in a criminal prosecution. In denying Woolery's motion to suppress the district court cogently explained:

> A review of I.C. §§ 18-8002, 18-8004 and 18-8006 shows that the implied consent language concerns the crime of driving under the influence and does not control or restrict the gathering of evidence in other criminal statutes. The defendant has separately been charged with vehicular manslaughter under I.C. § 18-4006 which does not prohibit the State of Idaho from obtaining evidence in any legal way possible. A review of the facts shows that the deputy sheriff had sufficient probable cause to believe that a vehicular manslaughter charge against the defendant was probable in this case.... This court does not believe that I.C. § 18-8002 restricts the ability of a police officer to obtain evidence for violation of I.C. § 18-4006. To allow a defendant to refuse to submit to evidence on a more serious crime of vehicular manslaughter was not within the intent of the legislature ...

Conviction affirmed.

BISTINE, J. and McFADDEN, J. Pro Tem., concur.

BAKES, C.J., concurs in the result.

JOHNSON, Justice, dissenting.

The majority concludes that the officer had probable cause to have Woolery's blood tested. A major part of the evidence on which the majority relies in reaching this conclusion is "the treating physician's opinion of intoxication." I am unable to concur with the majority's conclusion, because the record does not indicate that the officer was informed by the treating physician of this opinion.

It is true that the physician testified at trial that he was of the opinion Woolery was intoxicated. However, he did not testify, even at trial, that he told the officer of this opinion. The officer did not indicate in his report that the physician had informed him that in his opinion Woolery was intoxicated, nor did he include this in his testimony at trial. The trial court did not refer to the physician's opinion as one of the circumstances it took into account in concluding that the officer had probable cause to order a test of Woolery's blood.

Without proof that the physician informed the officer of his opinion that Woolery was intoxicated, in my view there is not sufficient evidence to support a finding of probable cause. I would reverse on this ground.