STATE OF NORTH CAROLINA v. LARRY BLAKE BUMGARNER, DEFENDANT

No. 8926SC788

(Filed 20 March 1990)

1. **Automobiles and Other Vehicles § 126.2 (NCI3d)— driving while impaired—chemical test—officer assistance for additional test—transportation by officer not required**

   The statute requiring an officer in charge of a defendant arrested for DWI who has submitted to a chemical analysis and desires additional testing to "assist the person in contacting someone to administer the additional testing or to withdraw blood," N.C.G.S. § 20-139.1(d), did not require the officer to drive defendant to the hospital for an additional test and was satisfied when the officer allowed defendant access to the telephone.

   **Am Jur 2d, Automobiles and Highway Traffic §§ 123, 305, 306, 377, 380.**

2. **Automobiles and Other Vehicles § 126.2 (NCI3d)— independent sobriety test—due process—transportation by officers not required**

   Defendant's due process rights were not violated by the failure of officers to take him to a hospital to obtain an inde-

STATE v. BUMGARNER

[97 N.C. App. 567 (1990)]

pendent sobriety test after the officers had administered a breathalyzer test to him.

**Am Jur 2d, Automobiles and Highway Traffic §§ 123, 305, 306, 377, 380.**

3. **Arrest and Bail § 9 (NCI3d); Constitutional Law § 68 (NCI3d) — DWI charge — delay of pretrial release — right to secure witnesses**

A magistrate's pretrial release requirement that a defendant charged with DWI not be released until 11:00 a.m. that morning except into the custody of a sober adult was authorized by N.C.G.S. § 15A-534.2(c) and did not violate defendant's constitutional right to secure witnesses in his favor. Art. I, § 23 of the N. C. Constitution.

**Am Jur 2d, Automobiles and Highway Traffic § 304; Bail and Recognizance § 29.**

APPEAL by defendant from judgment entered on 28 March 1989 by *Judge Robert W. Kirby* in the MECKLENBURG County Superior Court. Heard in the Court of Appeals on 13 February 1990.

Defendant was found guilty in district court of driving while impaired in violation of N.C. Gen. Stat. § 20-138.1. He received Level Two punishment and appealed to the superior court.

Prior to his trial in superior court, defendant filed a motion to dismiss the charge against him based upon a violation of his statutory and constitutional rights to obtain a second chemical analysis in addition to the sobriety tests conducted by law enforcement officers. The motion to dismiss was heard and denied. In superior court, defendant was convicted by a jury for driving while impaired. The trial court imposed Level Two punishment, which included a sentence of twelve months imprisonment. The sentence was suspended and defendant was placed on supervised probation. The conditions of probation included an active sentence of thirty days and a fine of $300. From this judgment, defendant filed a timely notice of appeal.

The evidence showed that Mr. Bumgarner was arrested by Trooper A. J. Fox on 20 February 1988. Trooper Fox testified that he stopped defendant after he observed defendant's automobile run off both sides of a highway. He noticed a strong odor of alcohol on defendant's breath. He asked Mr. Bumgarner to perform several

roadside sobriety tests. Defendant failed to get past "O" in reciting his "ABC's," and he did not satisfactorily perform the "finger-to-nose" test. At this point, defendant was arrested for DWI and transported to the Mecklenburg County jail.

At the jail, Trooper Fox requested that defendant perform some additional sobriety tests. Defendant was asked to stand on one leg, raise his other foot six to eight inches off the floor and count from 1001 to 1030. He became wobbly and at 1003 put his foot down and quit. When asked to perform the "walk-and-turn" test, defendant swayed while he walked and stumbled. He failed to adequately perform two other motor skills tests.

After being advised of his *Miranda* rights and signing a waiver, defendant stated he had consumed seven beers between 5:00 p.m. and 11:30 p.m. on the evening in question. Trooper Fox testified that defendant's speech was slurred as he answered the officer's questions. Trooper Fox was of the opinion that Mr. Bumgarner had consumed a sufficient quantity of some impairing substance to lose control of his faculties to an appreciable extent.

Defendant submitted to chemical analyses of his breath. The officer authorized to administer the tests informed defendant both orally and in writing of his rights relating to the procedures. One of these rights includes the right to have a qualified person of his own choosing administer an additional chemical test. N.C. Gen. Stat. § 20-16.2(a)(5). The officer performed two chemical analysis tests on defendant at 2:02 a.m. and 2:10 a.m. The results showed a breath alcohol concentration of .16 and .14, respectively.

Defendant testified that immediately after submitting to the tests he asked for an additional chemical test. Neither Trooper Fox nor the officer administering the breath analyses recalled such a request. Defendant was then committed into the custody of the sheriff of Mecklenburg County. While in the booking area of the sheriff's office, defendant testified that he again requested an additional blood test. At that point, Trooper Fox assisted defendant in contacting two local hospitals by providing him access to a free telephone and a telephone book. Trooper Fox also looked up one number for defendant.

The first hospital he contacted refused to perform the test. Defendant then called Charlotte Memorial Hospital where he was told that a blood analysis could be performed if he was transported

to the hospital with the arresting officer or if someone at the jail withdrew a blood sample for later analysis. Defendant informed Trooper Fox and deputies in the booking area of this information. Mr. Bumgarner asked one of the booking officers if he had the expertise to withdraw the blood, but defendant received no further assistance in his requests.

Magistrate Karen Johnson testified for the State. On the night of the arrest, she set defendant's bond at $400 and, based upon the testimony of Trooper Fox, her personal observations, as well as the results of the chemical analyses, imposed the restriction that defendant could not be released before 11:00 a.m. that morning except into the custody of a sober adult. This is a standard restriction in dealing with an impaired driving charge and is authorized by N.C. Gen. Stat. § 15A-534.2(c).

After appearing before the magistrate, defendant had three alternatives for immediately securing his release. He could have posted the full amount of the bond in cash, called a bail bondsman who would have paid eighty-five percent of the bond or gone through a pretrial release program. Defendant chose to go through the pretrial release program. Magistrate Johnson testified that under any of the alternatives defendant would not have been released prior to 11:00 a.m. except into the custody of a sober adult. Although defendant had the right to telephone a sober adult to take responsibility of him, he made only three telephone calls while in custody, the two hospital calls and one to an attorney who was not available. At some point, the secured bond and order of commitment were stricken, and defendant was released at about 9:00 a.m.

At defendant's hearing on the motion to dismiss the complaint, the trial court found as a fact that the only assistance provided to defendant was that afforded by Trooper Fox after defendant was committed to the custody of the sheriff of Mecklenburg County. The court found that no assistance whatsoever was provided by the Mecklenburg County Sheriff's Department at any time. The court held that this shortcoming of the sheriff's department, however, was not so flagrant as to warrant dismissal of the charges, and defendant's motion was denied.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Isaac T. Avery, III, for the State.*

*Rankin, Merryman, Dickinson, Rawls & Ledford, by Eben T. Rawls, III and Joseph L. Ledford, for appellant.*

STATE v. BUMGARNER

[97 N.C. App. 567 (1990)]

ARNOLD, Judge.

Defendant contends that the charge against him must be dismissed based upon a flagrant violation of his rights to assistance in obtaining additional chemical analysis pursuant to the provisions of N.C. Gen. Stat. § 20-139.1(d) and the due process clause of the fourteenth amendment of the United States Constitution since no officer transported him to a hospital for the purpose of having a blood sample withdrawn. He also asserts a violation of his constitutional right to secure witnesses in his favor pursuant to article I, section 23 of the North Carolina Constitution by reason of the pretrial release restrictions placed upon him by the magistrate.

[1] First we will examine defendant's contention that the law enforcement officers had a duty to transport him to a facility that would perform the additional test. A defendant who submits to chemical analysis is informed that he has a right to "have a qualified person of his own choosing administer a chemical test or tests in addition to any test administered at the direction of the charging officer." N.C. Gen. Stat. § 20-16.2(a)(5). In order to make this right a reality, the General Assembly also provided as follows:

> Right to Additional Test. — A person who submits to a chemical analysis may have a qualified person of his own choosing administer an additional chemical test or tests, or have a qualified person withdraw a blood sample for later chemical testing by a qualified person of his own choosing. Any law-enforcement officer having in his charge any person who has submitted to a chemical analysis *must assist the person in contacting someone to administer the additional testing or to withdraw blood, and must allow access to the person for that purpose.* The failure or inability of the person who submitted to a chemical analysis to obtain any additional test or to withdraw blood does not preclude the admission of evidence relating to the chemical analysis. (Emphasis added).

N.C. Gen. Stat. § 20-139.1(d).

The General Assembly did not specifically delineate the required duties of law enforcement officers once the right to additional tests are asserted. Prior to the effective date of the Safe Roads Act in 1983, we had held the law only required that an arresting officer assist a defendant in contacting someone to administer the test and that providing transportation was not re-

quired. *State v. Bunton,* 27 N.C. App. 704, 220 S.E.2d 354 (1975). The *Bunton* decision, however, was based on an older version of N.C. Gen. Stat. § 20-139.1(d) which, in 1975 provided:

> The person tested may have a physician, or qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law-enforcement officer. The failure or inability of the person tested to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law-enforcement officer. Any law-enforcement officer having in his charge any person who has submitted to the chemical test under the provisions of G.S. 20-16.2 *shall assist such person in contacting a qualified person as set forth above for the purpose of administering such additional test.*

Defendant contends that *Bunton* does not interpret the new version of N.C. Gen. Stat. § 20-139.1(d) and that the General Assembly expanded the rights of a defendant under the newer statute to require more assistance than providing a defendant with access to a telephone. We disagree.

In the quoted passages above, we have emphasized the operative language in both the old statute and the new version. Language in a statute should not be construed beyond its plain meaning. *Begley v. Employment Security Comm.,* 50 N.C. App. 432, 274 S.E.2d 370 (1981). Using this rule to analyze the two statutes, we believe that the substance of the language in the two statutes simply has not changed. The old statute instructed officers to "assist such person in contacting a qualified person," while the new version states that the officer must "assist the person in contacting someone to administer the additional testing or to withdraw blood." The gist of both statutes is the same: the police must *assist* a defendant in *contacting* a person who can perform the additional test. Because the substance of the language has not changed, we hold that the following rule from *State v. Bunton* still applies: "All that the statute required of the arresting officer was that he assist defendant in contacting the doctor; he was not required in addition to transport the defendant to the doctor." *Bunton,* 27 N.C. App. 704, 707-708, 220 S.E.2d 354, 356.

The only substantive change in the amended statute is the requirement that law enforcement officials allow access to an in-

STATE v. BUMGARNER

[97 N.C. App. 567 (1990)]

terned defendant. The General Assembly probably made this addition in 1983 because of *State v. Sawyer,* which interpreted the statute as containing this guarantee of access. *State v. Sawyer,* 26 N.C. App. 728, 217 S.E.2d 116, *cert. denied,* 288 N.C. 395, 218 S.E.2d 469 (1975). It would be imprudent for us to read the addition of this access requirement as otherwise expanding an officer's duties of assistance.

N.C. Gen. Stat. § 20-139.1(d) does not guarantee an additional sobriety test. On the facts before us, we see no violation of defendant's statutory rights. Trooper Fox provided defendant with the assistance envisioned by the statute. The fact that assistance was provided by the trooper rather than the sheriff's deputies is not sufficient to require dismissal of the charge.

Most other states follow the *Bunton* rule that we have reembraced here. The majority rule is that when an accused is entitled to an independent test he must only be given reasonable opportunity to procure one. Annotation, *Drunk Driving: Motorist's Right to Private Sobriety Test,* 45 A.L.R. 4th 11 (1986). Most jurisdictions draw the line between police *interference* and police *assistance,* usually demanding no more than that the defendant be allowed a phone call. *Id.*

[2] Defendant in the case before us contends that the failure of law enforcement officers to take him to the hospital also violated his due process rights as guaranteed by the United States Constitution. While this challenge apparently was not raised in *State v. Bunton,* we now reject such an assertion. Again, the majority rule is that beyond allowing a telephone call, there are few constitutional demands on officers in this situation. *See* Annotation, 45 A.L.R. 4th 11. Law enforcement officers may not hinder a driver from obtaining an independent sobriety test, but their constitutional duties in North Carolina go no further than allowing a defendant access to a telephone and allowing medical personnel access to a driver held in custody.

[3] Finally, defendant contends that his constitutional right to secure witnesses in his favor as protected by article I, section 23 of the North Carolina Constitution was violated by the pretrial release requirement imposed by Magistrate Johnson. Defendant claims that the imposition of the requirement that he not be released until 11:00 a.m. unless a sober adult appeared thwarted his attempt to obtain evidence in his own behalf at the only point

in time such evidence could be gathered. This restriction violated his pretrial release right and prejudiced him. Again, we disagree.

The restriction defendant complains of is clearly authorized by N.C. Gen. Stat. § 15A-534.2(c). There is ample evidence to support the trial court's finding that the magistrate performed her job in setting the pretrial release requirements. Magistrate Johnson based her determination of the additional pretrial release restriction upon the testimony of Trooper Fox, her personal observations, as well as the results of the sobriety test. This evidence was sufficient to support her decision to impose the restriction. Furthermore, the record clearly indicates that the magistrate informed defendant of the requirements of his pretrial release. Although defendant tried to contact an attorney to observe his sobriety test, he admittedly did not attempt to call any other witness and apparently was unable to find a sober adult to agree to take custody of him. Defendant cannot blame anyone but himself for not securing his timely release.

In summary, the provisions of N.C. Gen. Stat. § 20-139.1(d) were not violated by only providing defendant with access to a telephone. His federal constitutional rights were not violated in failing to transport him to the hospital. Furthermore, the magistrate correctly imposed the pretrial release restriction requiring a sober responsible adult to take custody of the defendant pursuant to N.C. Gen. Stat. § 15A-534.2. There was no statutory or constitutional violation in her actions.

No error.

Judges JOHNSON and ORR concur.