869 P.2d 1384

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Steven L. BURRIS, Defendant–Appellant.**

No. 20164.

Court of Appeals of Idaho.

Feb. 24, 1994.

E. Maureen Laflin and Jill M. Poffenroth, Moscow, for appellant. Jill M. Poffenroth argued.

Larry EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for respondent. Michael A. Henderson argued.

**WALTERS, Chief Judge.**

Steven Burris entered a conditional plea of guilty to driving while under the influence of alcohol, expressly reserving his right to challenge the magistrate's denial of his motion to suppress the results of his blood test. On appeal, Burris contends that the test results were inadmissible because his blood was taken without his consent and after he refused to take the test. He also asserts that the evidence was obtained in violation of his state constitutional right to consult with an attorney before taking the test. For the reasons explained below, we affirm.

### Facts and Procedural Background.

At about 2:21 on the morning of April 6, 1991, Officer Mike Karlin of the Lewiston Police Department observed a vehicle, driven without its headlights on, make an improper turn. Karlin stopped the vehicle and began questioning its driver, Steven Burris, whereupon he discovered Burris was deaf. Because he suspected Burris was under the influence of alcohol, Officer Karlin requested Officer Alan Sharp, who knew sign language, to come to the scene and administer the standard field sobriety tests. When Burris did not satisfactorily complete the field tests, Sharp arrested him.

The officers took Burris to St. Joseph's Medical Center to test his blood for intoxicants.[1] Attempting to comply with I.C. § 18–8002(3), which requires that the person arrested be informed of the consequences of refusing the test,[2] Officer Sharp gave Burris a written "advisory form" which explained Idaho's implied-consent law. Burris handed the form back to Officer Sharp, unsigned, indicating that he could not read it. Officer Sharp then attempted to explain the content and meaning of the form to Burris, having to repeat the information several times. When

---

1. The citation charged Burris with "operating a motor vehicle while under the influence of intoxicating beverages or drugs." The record does not indicate what Burris was tested for or what the test results showed, except by inference, *i.e.*, the court accepted Burris' conditional plea to driving while under the influence of alcohol.

2. Idaho Code § 18–8002(3) provides that, at the time of the evidentiary test for alcohol concentration, "the person *shall* be informed that if he

refuses to submit to or if he fails to complete, evidentiary testing" his driver's license will be absolutely suspended for 180 days unless he prevails at a timely-requested hearing to show cause for his refusal, and that after he submits to the evidentiary test, he may, if practicable, have additional tests made by a person of his own choosing at his own expense. I.C. § 18–8002(3)(a)–(d).

hospital staff subsequently drew a sample of his blood for testing, Burris did not object or offer any resistance. After the test, Officer Sharp issued a citation to Burris charging him with driving while under the influence, in violation of I.C. § 18–8004.

Burris later filed a motion to suppress the results of the blood test, asserting that his blood was taken without his consent and after he had refused to take the test. Burris also contended in his motion that the test was administered in violation of his right to counsel as guaranteed under the Idaho Constitution. At the suppression hearing, the magistrate heard evidence indicating that Burris had difficulty understanding sign language, and that his reading skills were poor. Burris also testified that he did not understand what was going on when asked to submit to the blood test, and that the blood sample was taken against his will.

The magistrate denied Burris' motion. Although the magistrate found that Burris did not fully understand the provisions of I.C. § 18–8002(3), he concluded that Burris nonetheless had consented to the test by virtue of Idaho's implied consent statute, I.C. § 18–8002(1). The magistrate also found that Burris had not refused, or attempted to refuse, to submit to the test. Finally, the magistrate held that Burris had no right to consult with an attorney before submitting to the test.

Following the denial of his motion to suppress, Burris entered a conditional plea of guilty to driving while under the influence of alcohol, expressly reserving his right to challenge the magistrate's ruling on appeal. *See* I.C.R. 11(a)(2). The district court, sitting in its appellate capacity, upheld the magistrate's ruling. This appeal followed.

## Issues Presented On Appeal

Seeking to reverse the magistrate's ruling, Burris raises the following issues on appeal:

(1) Did the magistrate err in concluding, as a matter of law, that Burris had consented to submit to the evidentiary test?

(2) Did the magistrate err in failing to find that Burris had in fact refused to submit to the test?

(3) Did the magistrate err in concluding that the Idaho Constitution did not confer a right to consult an attorney before taking the test?

## Standard of Review

■ Where the magistrate's findings of fact are supported by substantial, even if conflicting evidence in the record, we will not disturb them on appeal. *State v. Carr,* 123 Idaho 127, 844 P.2d 1377 (Ct.App.1992). However, we exercise free review on questions of law. *Matter of McNeely,* 119 Idaho 182, 804 P.2d 911 (Ct.App.1990). When considering an appellate decision of the district court which has reviewed a magistrate's findings and conclusions, we examine the record of the magistrate independently of, but with due regard for, the district court's decision. *State v. Kenner,* 121 Idaho 594, 826 P.2d 1306 (1992); *State v. Barker,* 123 Idaho 162, 845 P.2d 580 (Ct.App.1992).

With these standards in mind, we turn to the questions raised by Burris' appeal.

## 1. Did the magistrate err in concluding that Burris had consented to the evidentiary test?

■ Idaho's implied-consent statute provides that "[a]ny person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol...." I.C. § 18–8002(1). Notwithstanding the legal consent implied by operation of this statute, Burris asserts that such consent was some how vitiated because he was not informed of his "right to refuse" the test, a right he contends is created by I.C. § 18–8002(3), and a right of which the officers were statutorily required to advise him.

Burris' argument, however, was addressed and soundly rejected in *State v. Woolery,* 116 Idaho 368, 775 P.2d 1210 (1989). There, the Supreme Court expressly held that the requirement contained in I.C. § 18–8002(3) that a motorist suspected of driving while under the influence be advised of the consequences of refusal *did not* create a right to refuse the test or to withdraw consent. "The Idaho Legislature has acknowledged a driv-

er's *physical ability to refuse* to submit to an evidentiary test, but it did not create a *statutory right* for a driver to withdraw his previously given consent to an evidentiary test for concentration of alcohol, drugs or other intoxicating substances." *Id.* at 372, 775 P.2d at 1214 (emphasis original). In arriving at this conclusion, the Court explained:

> [R]efusal as contemplated by the statute is something other than withholding of consent because consent is legally implied. It is a refusal to comply with the consent which has already been given as a condition of a license to drive. The purpose of a warning of license suspension following a refusal ... is to overcome an unsanctioned refusal by threat instead of force. It is not to reinstate a right to choice, but rather to nonforcibly enforce the driver's previous implied consent.

*Id.,* 116 Idaho at 373, 775 P.2d at 1215, *quoting State v. Newton,* 291 Or. 788, 636 P.2d 393, 397–98 (1981).

Thus, regardless of whether Burris was informed of his rights under I.C. § 18–8002(3), he was legally deemed to have given his consent to the evidentiary test. We reject Burris' arguments to the contrary.

## 2. Did the magistrate err in finding that Burris did not refuse to take the test?

■ Burris submits that even if a motorist has no right to refuse the test, the public policy identified in *Woolery* nonetheless requires that an officer acquiesce to a motorist's refusal. If an evidentiary test is administered over the motorist's refusal, Burris continues, the results of the test must be suppressed. Burris asserts that he did, in fact, refuse to submit to the test, and that the magistrate's finding to the contrary was in error. Consequently, he contends, the magistrate's denial of his motion to suppress must be reversed.

Assuming, without deciding, that the results of an evidentiary test must be suppressed if obtained over a motorist's refusal, we turn to the factual question of whether Burris refused to submit to the test. The magistrate expressly found that Burris had not refused, or attempted to refuse, to take the test. Contesting this finding, Burris argues that although he did not physically resist the persons drawing his blood, he clearly manifested his refusal by returning the written advisory form, unsigned, to Officer Sharp.

A review of the record shows that when handed the form, Burris was asked if he could read it; Burris gave the form back indicating he could not. In view of these circumstances, the magistrate was not required to construe Burris' failure to sign the form as an act of refusal to take the test, but could properly view the act as indicating merely that Burris did not understand the form's contents. We conclude that the magistrate's finding that Burris did not refuse the test is supported by the record. We will not disturb that finding on appeal.

## 3. Does the Idaho Constitution provide a right to consult counsel before taking the test?

Burris also maintains that he was denied the right to consult with an attorney before submitting to the test. He maintains that this right derives from the right-to-counsel provision of Article 1, § 13 of the Idaho Constitution. For the reasons stated in our previous decision in *Matter of Triplett,* 119 Idaho 193, 804 P.2d 922 (Ct.App.1990), we disagree.

■ The Idaho Supreme Court has held that the Sixth Amendment right to counsel does not attach when a motorist is arrested and asked to take an evidentiary test, reasoning that such tests are not part of a criminal proceeding, but are civil in nature. *See State v. Ankney,* 109 Idaho 1, 704 P.2d 333 (1985); *Mills v. Bridges,* 93 Idaho 679, 471 P.2d 66 (1970). While we acknowledge that Idaho's Constitution may be interpreted as more protective of the rights of Idaho citizens than may exist under interpretations given the federal constitution, *see Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); *State v. Guzman,* 122 Idaho 981, 842 P.2d 660 (1992), we are not persuaded we should deviate from current precedent in this case. As we stated in *Triplett,*

> [U]nder our state Constitution, like the Sixth Amendment, an accused enjoys the right to counsel in "criminal prosecutions."

As noted above, our state Supreme Court has held that proceedings under I.C. § 18–8002 are civil, not criminal. Moreover, in *State v. Woolery*, our Supreme Court said, "Idaho Code § 18–8002 is devoted entirely to the administrative, or civil, suspension of the license of a driver. This section does not in any way discuss criminal offenses related to driving under the influence of alcohol." Given this language, we do not see how our Supreme Court would apply the state constitution differently from the Sixth Amendment to a blood-alcohol test requested under I.C. § 18–8002. Following our current Supreme Court precedent, we are constrained to hold that the test is outside the scope of a "criminal prosecution" for the purpose of Article 1, § 13 of the Idaho Constitution.

119 Idaho at 195, 804 P.2d at 924.

Although Burris' brief on appeal urged the Supreme Court to revisit its prior holdings, that Court declined to do so at this time and instead assigned Burris' appeal to this Court. Accordingly, we adhere to our previous decision in *Triplett*. We conclude that Burris' blood test was not administered in violation of his constitutional right to counsel.

The appellate decision of the district court, upholding the magistrate's denial of Burris' motion to suppress, is therefore affirmed.

LANSING and PERRY, JJ., concur.