911 P.2d 774

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Ida Kemmer CARR, Defendant–
Respondent.**

No. 21440.

Court of Appeals of Idaho.

Dec. 21, 1995.

Review Denied March 8, 1996.

Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General (argued), Boise, for appellant.

Lonnie F. Sparks, Coeur d'Alene, argued, for respondent.

WALTERS, Chief Judge.

The State appeals from a district court order suppressing the results of a blood-alcohol content (BAC) test. For the reasons explained herein, we affirm the district court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 6, 1993, Ida Carr was arrested by Coeur d'Alene Police Officer Bill McLeod for driving while under the influence of alcohol (DUI), and was transported to the Kootenai County Public Safety Building. Before Officer McLeod conducted an evidentiary breath test, and while he was reading the standard police advisory form aloud to her, Carr requested access to a telephone in order to contact an attorney. Consistent with I.C. § 18–8002(2), McLeod informed Carr that she had no right to consult with an attorney prior to taking the breath test. McLeod also informed Carr that after taking the State's breath test, she could obtain an additional test at her own expense. Carr agreed to take the breath test, which yielded results of .20 and .21.

McLeod then took Carr to a holding cell, during which time Carr asked when she could speak to an attorney. McLeod informed Carr that she could "make any phone calls as soon as the jail personnel were ready to let her make the phone calls." At some point, McLeod prepared a uniform citation, charging Carr with misdemeanor DUI, I.C. § 18–8004(1). McLeod then departed and Carr made several requests of other officers to contact an attorney. The officers denied her requests. Approximately five hours after her arrest, Carr was permitted access to the telephone, and she contacted a bondsman.

Carr filed a motion to dismiss the DUI charge, arguing that the State violated her right to counsel under the Sixth and Fourteenth Amendments of the United States Constitution and that as a result, she was denied the right to a fair trial. At the hearing on the motion to dismiss, the magistrate also considered whether suppression of evidence should be ordered as an alternative to dismissal of the charge. After taking the motion under advisement, the magistrate denied Carr's motion in its entirety. Carr then entered a conditional plea of guilty, under I.C.R. 11(a)(2), preserving the right to appeal from the magistrate's denial of her motion to dismiss. The magistrate entered a judgment of conviction, and Carr appealed to the district court. On appeal, the district court reversed the magistrate's decision and suppressed the results of the breath test. The Court ruled:

Carr was prejudiced by the State's failure to allow her to gather her own evi-

dence concerning her blood-alcohol level. The only evidence concerning her blood-alcohol level is that which was gathered by the State. Therefore, the correct remedy is the suppression of the State's evidence which could have been contested by Carr had she been allowed to gather her own evidence of her blood-alcohol level. As such, the State's evidence gathered through admission of the BAC will be suppressed.

The State appeals.

## ANALYSIS

■■■ When considering an appellate decision of the district court which has reviewed a magistrate's findings and conclusions, we examine the record of the magistrate independently of, but with due regard for, the district court's decision. *State v. Burris*, 125 Idaho 289, 291, 869 P.2d 1384, 1386 (Ct.App.1994). Where the magistrate's findings of fact are supported by substantial, even if conflicting, evidence in the record, we will not disturb them on appeal. *Id.* However, we exercise free review on questions of law. *Id.*

At the outset, we note that the law is clear in Idaho that a driver does not have the right to consult with an attorney prior to submitting to, or refusing to submit to, an evidentiary BAC test. I.C. § 18-8002(2); *State v. Ankney*, 109 Idaho 1, 5–6, 704 P.2d 333, 337–38 (1985); *Matter of McNeely*, 119 Idaho 182, 187, 804 P.2d 911, 916 (Ct.App.1990). The issue presented in this case, however, is whether Carr's constitutional rights were violated when the State denied her request to telephone her attorney *following* the administration of the State's BAC test.

A similar scenario was recently presented to this Court in *State v. Madden*, 127 Idaho 894, 908 P.2d 587 (Ct.App.1995). In *Madden*, we held that the defendant was denied her statutory right to an independent BAC test. Unlike *Madden*, however, in this case

there is no evidence that Carr asserted her statutory right to an independent BAC test, despite the fact that she was advised of her right to obtain a second test. Therefore, the statutory issue is not squarely before us as it was in *Madden*.

In her motion to dismiss the DUI charge, Carr argued that she was denied the assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments and could not receive a fair trial. She asserted that she was "held in jail while critical evidence[,] the blood-alcohol content of her blood[,] was destroyed." Thus, Carr concluded, she "was prevented from obtaining an independent blood test to prove her innocence." Similarly, in her memorandum in support of the motion to dismiss, Carr stated: "[B]y denying Ms. Carr effective assistance of counsel, the police eroded Ms. Carr's evidence, and have denied her a defense to the charge. She has been denied a fair trial." Carr presented the same arguments on appeal to the district court.[1] Her attorney also suggested that suppression of evidence could be the appropriate remedy.

■■■ The district court concluded that the State unconstitutionally infringed upon Carr's right to counsel under the Sixth and Fourteenth Amendments and, as a result, suppressed the results of the State's BAC test. We agree with the district court that the officers violated Carr's constitutional rights. However, we conclude that Carr's arguments regarding the denial of her right to gather exculpatory evidence and her right to a fair trial are essentially due process claims, although couched in terms of the interference with her ability to contact counsel. We further conclude that Carr was denied her right to due process under the Fourteenth Amendment of the United States Constitution.

■■■ The due process clause of the United States Constitution prohibits deprivations of life, liberty or property without "funda-

---

1. In the argument to the district court, Carr's attorney disclosed that:

    May it please the Court … by way of impact on the criminal process in this community, as a practical matter, since this case was appealed to this court, the once common police prac-

    tice of refusing a motorist arrested for D.U.I. the opportunity to use the telephone until several hours after the arrest has been discontinued. Every recent case that I've handled, the motorist has been given the opportunity to use the telephone within an hour.

mental fairness" through governmental conduct that offends the community's sense of justice, decency and fair play. *Roberts v. State of Maine,* 48 F.3d 1287, 1291 (1st Cir. 1995). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). Due process, unlike some legal rules, "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961) (citation omitted). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

■ The test for determining whether state action violates procedural due process requires a court to consider three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the existing procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). We apply these factors in turn.

■ The private interest affected in this case is Carr's interest in procuring evidence which would challenge the results of the State's BAC test. By denying Carr access to a telephone for approximately five hours after her arrest for DUI, the State denied her the means by which she could establish her defense. As recognized by the Idaho Supreme Court, an "inherent exigency" exists in a DUI setting, due to the destruction of the evidence by metabolism of alcohol in the blood. *State v. Woolery,* 116 Idaho 368, 370, 775 P.2d 1210, 1214 (1989). Therefore, the only opportunity for a defendant in a DUI case to gather exculpatory evidence is within a reasonable time following arrest and administration of the State's BAC test. *See Tacoma v. Heater,* 67 Wash.2d 733, 409 P.2d 867, 871 (1966) (denial of right to contact attorney following issuance of citation for DUI prevented defendant's effective preparation of defense because "evidence of intoxication dissipates with the passage of time").

■ As a result, when a person is arrested for DUI and given an evidentiary BAC test, that person must be allowed, at a minimum, to make a phone call upon request to do so. Such contact provides the means through which the arrestee is able to gather evidence tending to refute the State's evidence of intoxication and thereby preserve the "right to a fair opportunity to defend against the State's accusations." *Chambers, supra.* For example, the person contacted by the arrestee could facilitate the administration of an independent BAC test, a right guaranteed by I.C. § 18–8002(4)(d).[2] Indeed, many states have held that due process requires that a DUI defendant be afforded a reasonable opportunity to obtain an independent blood test as such a test assures the defendant's right to gather exculpatory evidence. *See e.g., Bilbrey v. State,* 531 So.2d 27 (Ala.Crim.App. 1987); *McNutt v. Superior Court of State of Ariz.,* 133 Ariz. 7, 648 P.2d 122 (1982); *Brown v. Municipal Court of Los Angeles,* 86 Cal.App.3d 357, 150 Cal.Rptr. 216 (1978); *Jones v. State,* 200 Ga.App. 666, 409 S.E.2d 251, 253 (1991); *Scarborough v. State,* 261 So.2d 475 (Miss.1972); *State v. Swanson,* 222 Mont. 357, 722 P.2d 1155 (1986); *State v. Bumgarner,* 97 N.C.App. 567, 389 S.E.2d 425, 426 (1990); *Lakewood v. Waselenchuk,* 94 Ohio App.3d 684, 641 N.E.2d 767 (1994); *State v. Choate,* 667 S.W.2d 111 (Tenn.Crim. App.1983).

In addition, as noted by Carr, the person contacted by the arrestee could arrange for a photograph to be taken to demonstrate that the arrestee's eyes were not bloodshot but were clear and white; prepare a tape recording to demonstrate that the arrestee had clear speech; videotape the arrestee to show

---

**2.** Idaho Code § 18–8002(4)(d) provides, in pertinent part:

After submitting to evidentiary testing at the request of the peace officer, [the driver] may, when practicable, at his own expense, have additional tests made by a person of his own choosing.

that he or she has balance and is able to walk in a straight line; perform a gaze nystagmus test to show smooth eye pursuit at all angles; or simply serve as a witness who observed the aforementioned characteristics of sobriety. As demonstrated, the interest affected in this case is substantial.

Analyzing the second factor articulated in *Mathews,* we conclude that the existing procedure, which denies an individual arrested for DUI access to a telephone upon request until well after alcohol in the bloodstream has dissipated, causes a great risk of erroneous deprivation of the arrestee's interest in obtaining evidence in his or her defense. Moreover, as described above, the probable utility of additional or substitute procedural safeguards is also great. Allowing an individual arrested for DUI to make a telephone call once the State administers its evidentiary BAC test ensures that the arrestee will be given the opportunity to obtain exculpatory evidence. Indeed, without timely access to a telephone, there is little likelihood of successfully challenging the State's evidence of intoxication.

The third factor articulated in *Mathews,* the government's interest, including "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," also supports our conclusion that Carr was denied due process. The State has failed to demonstrate any reason for refusing to allow Carr to call her attorney until several hours after administration of the State's BAC test. In addition, the fiscal and administrative burden of allowing those who are arrested and tested for DUI to make a telephone call is minimal. Thus, applying the three factors articulated in *Mathews,* we hold that Carr was denied her right to due process.

The State also argues, however, that "Carr, under I.C. § 18–8002(4)(d), could have availed herself of the opportunity for additional testing had she only told Officer McLeod that she wished to have additional tests performed. She literally slumbered on her statutory right...." The State does not suggest how this additional test would have occurred in light of the fact that the officers did not permit Carr to use a telephone for any purpose. The State's argument is unconvincing, if not specious.

Finally, the State contends that even if the officers' actions were improper, Carr cannot demonstrate that she was thereby prejudiced. The State asserts that in light of the fact that the breath tests revealed a BAC of .20 and .21, it is doubtful that an independent blood test would have provided Carr with exculpatory evidence and that it is mere "speculation" to guess what evidence would have been obtained had Carr been permitted to call an attorney.

■ While it is true that as a result of the officers' actions we may only speculate as to what evidence, if any, Carr's attorney would have been able to gather in Carr's defense, we disagree with the State's suggestion that the results of the BAC test render the State's impropriety harmless. It has been established that a defendant has the right to challenge the accuracy of the test results obtained by the Intoximeter, the device used by the State to test Carr's blood-alcohol content. *See State v. Hopkins,* 113 Idaho 679, 747 P.2d 88 (Ct.App.1987); *State v. Hartwig,* 112 Idaho 370, 732 P.2d 339 (Ct.App.1987). Moreover, I.C. § 18–8002(4)(d) clearly contemplates that those arrested for DUI may exercise their right to obtain an independent test. Therefore, we are not of the opinion that simply because the results of the State's BAC test operate to the State's advantage, the arrestee's right to gather exculpatory evidence may be eviscerated.

### CONCLUSION

We conclude that, by denying Carr's request to telephone her attorney and holding her *incommunicado* for an unreasonable time following administration of the State's BAC test, the State violated Carr's right to due process. Furthermore, we hold that suppression of the State's BAC test was the appropriate remedy. *See Brown v. Municipal Court of Los Angeles,* 86 Cal.App.3d 357, 150 Cal.Rptr. 216, 220 (1978). The district court order suppressing the results of the BAC test is affirmed.

PERRY, J., concurs.

LANSING, J., specially concurring.

I differ from the majority only with respect to the scope of the remedy to be pro-

vided as a consequence of the deprivation of Ida Carr's right to due process. In my view, the rationale for suppression of the BAC test is equally applicable to other evidence of Carr's intoxication that the State might present through testimony of the arresting officer and others regarding their observation of Carr's appearance or behavior. The evidence which Carr was prevented from preserving would be as necessary to rebut an officer's testimony that Carr smelled of alcohol, had slurred speech or exhibited poor balance as it would be to counter the BAC test results. Therefore, I would suppress not only evidence of the BAC test but also testimony of the State's witnesses as to their observations of Carr, after her vehicle was stopped, that suggested intoxication. I would not suppress testimony as to any observation of Carr's erratic driving since any person Carr might have been able to contact had she been allowed to use the telephone would not have been able to procure evidence of Carr's conduct while driving.

In all other respects, I join in the majority opinion.