SNAVELY, APPELLANT, *v.* DOLLISON, REGISTRAR, APPELLEE.

[Cite as Snavely v. Dollison (1979), 61 Ohio App. 2d 140.]

(No. 38042—Decided March 1, 1979.)

*Kohrman & Jackson Co., L.P.A.,* for appellant.
*Mr. Louis H. Orkin,* for appellee.

JACKSON, J. This appeal is taken from the final judgment of the Municipal Court of Shaker Heights affirming the action of the Registrar of the Ohio Bureau of Motor Vehicles suspending the driving rights of Thomas G. Snavely, appellant, for six months for failure to submit to a "breathalyzer" test under Ohio's "implied consent" statute, R. C. 4511.191.

Upon notice of the suspension of his license to drive, Mr. Snavely filed a petition for a hearing, pursuant to R. C. 4511.191 (F). The trial court below conducted a hearing, pursuant to R. C. 4511.191 (G), and the following evidence was adduced.

Mr. Snavely was arrested on January 6, 1977, at 12:45 a.m. for driving while under the influence of alcohol, in violation of Maple Heights Ordinance 434.01. He was taken to the Maple Heights police station where he was advised of the consequences of refusing to take a sobriety test. Those consequences include a six-month suspension of driving privileges. Thereupon Mr. Snavely said he would take the test. However, when the machine used to perform the test was "warmed up," appellant requested permission to call his attorney first, before submitting to the test. He was told that he could not talk to his attorney until after completing the test. The police officers construed his statement as a refusal to take the test, so advised appellant, and recorded the refusal as occurring at 1:20 a.m. Shortly thereafter, appellant was given access to a telephone. He did not try to call his attorney at that time, having been informed that his "refusal" was already a matter of record, and that he thought it better to wait until morning due to the late hour. The trial judge affirmed the action of the Registrar, suspending the driving privileges of Mr. Snavely for six months.

The precise issue before this court is whether or not a statement by the accused to the police that he wanted to call his lawyer before taking a "breathalyzer" test, where he was not permitted to make such a phone call, constitutes a "refusal" within the meaning of R. C. 4511.191, and thereby subjects him to a suspension of driving privileges for six months.[1]

The Ohio Supreme Court has held in *McNulty* v. *Curry* (1975), 42 Ohio St. 2d 341, at 345, that the constitutional right to counsel is not applicable to cases coming under the implied consent statute because the decision to withhold or give consent to take a "breathalyzer" test is not a "critical stage" of a "criminal prosecution." The court also held in that case that Ohio's statutory right to counsel, *see* R. C.

---

[1] The error assigned on appeal is as follows:

"The trial court committed reversible error in sustaining the suspension of Appellant's driving rights where Appellant was denied the right to communicate with an attorney before submitting to the chemical test required by Section 4511.191, *Ohio Revised Code*, when the statutory two hour period was not endangered, thereby violating Appellant's statutory right to communicate with an attorney as provided by Section 2935.20, *Ohio Revised Code*."

2935.14 and R. C. 2935.20,[2] was not violated because the accused:

"***was given practically free access to a telephone; that he was not restricted on the number of calls made; that upon reaching his friend Short, he spoke with him for over 10 minutes, and that Short eventually dispatched appellant's lawyer to his aid; and that at no time and in no way did the police officers attempt to interfere or abbreviate appellant's consultation with his attorney when he finally arrived."

In contrast, the accused in the case at bar was not given any opportunity to call his attorney until after his "refusal" was made a matter of record. In fact, he was told he had no right to call his lawyer. In the words of the arresting officer:

"***Mr. Snavely was read the implied consent form***at which time he said he would take the test and that he wanted to take the test and that he was ready to go. When the breathalyzer was ready, Mr. Snavely then said he wanted to call his lawyer. *He was then advised he had no right to call his lawyer until the test was completed.* We advised Mr. Snavely his lawyer would tell him to take the test but Mr. Snavely said I have to call him. *Mr. Snavely was advised he refused to take the test and then was taken to make his calls.*"

Thus, an essential distinction exists between *McNulty* and the case at bar. That distinction is that while compliance with the statutory right to counsel was found to exist in *McNulty,* there is no such compliance with that statute in the case now before this court. This distinction is controlling upon our resolution of the case at bar. By explicitly holding in

---

[2] R. C. 2935.14 is inapplicable to the case at bar in that appellant was not arrested for a felony and the record fails to disclose any evidence that he was unable to make bond. R. C. 2935.20 does apply and provides as follows:

"*Right to counsel.*

"After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a reasonable number of telephone calls or in any other reasonable manner. Such person shall have a right to be visited immediately by any attorney at law so obtained who is entitled to practice in the courts of this state, and to consult with him privately. No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation provided for by this section.

"Whoever violates this section shall be fined not less than twenty-five nor more than one-hundred dollars or imprisoned not more than thirty days, or both."

*McNulty* that "appellant 'refused' to take the test, where he continued to withhold his consent after the police officers had complied with R. C. 2935.14 and 2935.20," the court implicitly directs that a failure to comply with the statutory right to counsel on the part of police officers would prevent a conclusion that the accused "refused" to take the test where the refusal is conditioned only upon a request to call an attorney for advice. Therefore, we conclude that appellant did not refuse to submit to a breathalyzer test within the meaning of R. C. 4511.191, and consequently his license may not be suspended.

Furthermore, we believe this conclusion to be in accordance with the pre-*McNulty* decision of the Franklin County Court of Appeals in *Raine* v. *Curry* (1975), 45 Ohio App. 2d 155, and adopt the reasoning therein. The basic facts of that case are similar to those in the case at bar. The defendant there refused to take a breathalyzer test unless he was first permitted to contact an attorney for the purpose of seeking advice in regard to his taking the test. The Court of Appeals held that such a conditional refusal, where it was timely made, and was not a mere fraud or subterfuge, did not constitute a refusal as contemplated by R. C. 4511.191. *See also Siegwald* v. *Curry* (1974), 40 Ohio App. 2d 313.

In relation to the issue before this court in the case at bar, we heartily approve the comments of the trial judge below in a reported decision on an analogous case. The comments are:

"It should be noted that the chemical test is not the sole means of establishing evidence of intoxication.***Enforcement of all criminal laws would be made easier by use of totalitarian-type of inquiry such as compulsory injection of truth serum, lie-detectors and the similar devices of that nature. The conception of justice in this nation has never included such practices as being acceptable even though some practical benefits might accrue." *Narten* v. *Curry* (1972), 33 Ohio Misc. 94, 96.

Accordingly, we reverse the judgment of the trial court and remand this case to that court for further action consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

STILLMAN, P. J., and PATTON, J., concur.