CITY OF LAKEWOOD, Appellee,

v.

WASELENCHUK, Appellant.

[Cite as *Lakewood v. Waselenchuk* (1994), 94 Ohio App.3d 684.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64426.

Decided May 2, 1994.

*Jeffrey Short,* Lakewood Prosecutor, for appellee.

*Daniel E. Shields,* for appellant.

PORTER, Judge.

Defendant-appellant Nancy Waselenchuk appeals from her conviction following a bench trial in Lakewood Municipal Court for operating a motor vehicle while

under the influence of alcohol in violation of city of Lakewood Ordinance 333.01. Defendant claims error in the trial court's failure to suppress evidence of her breathalyzer test, since she was deprived of her right to counsel contrary to R.C. 2935.20 and her constitutional rights. We find merit to the appeal and reverse the conviction.

At 1:43 a.m. on May 18, 1992, defendant was stopped by a Lakewood police officer for driving without her headlights on. After the officer conducted field sobriety tests on defendant, she was arrested for driving while under the influence of alcohol and taken to the Lakewood Police Station for booking.

The booking procedure commenced at 2:18 a.m. After being advised of her rights, she signed the form indicating she understood her rights. She was then presented with a second "waiver of rights" form, asked if she understood it and if she would sign it, waiving her rights to an attorney. Defendant replied:

"I'm scared. This sounds like I'm up under a real big serious thing and I think I should have an attorney."

The officers did not offer defendant a telephone or seek the name of her attorney. The booking procedure continued without execution of the waiver form. Defendant continued to answer the questions so she would appear cooperative. Near the end of the booking procedure, defendant was permitted to place calls to her fiance, her sister and her father in order to find someone to post bond.

Prior to the administration of the breathalyzer test at approximately 3:00 a.m., defendant was read the implied consent form by the booking officer. She stated, "God, and I have to decide this without a lawyer?" She did not press her demand for an attorney again because of "time constraints," *i.e.*, the necessity that the breathalyzer test be taken promptly. The test proceeded and disclosed a .16 blood-alcohol content.

On July 7, 1992, defendant moved to suppress the breathalyzer test on the grounds the arresting officers violated R.C. 2935.20. At the suppression hearing on July 24, the motion was amended to include an *in limine* request.

At the suppression hearing, the defendant and the arresting and booking officers testified. The audiocassette booking tape and waiver of rights form were received into evidence. The court overruled defendant's suppression/*in limine* motions on the grounds that the officers did not violate R.C. 2935.20.

During the bench trial on August 27, 1992, defendant renewed the suppression/*in limine* motions, which were overruled. Defendant was convicted of the DUI offense charged, a stay of the sentence was filed, and this appeal ensued.

We will address defendant's assignments of error together for convenience because they all bear on the critical issue of whether defendant was deprived of her constitutional and statutory right to counsel under the circumstances presented.

"I.   The trial court committed reversible error when it overruled defendant-appellant's motion to suppress/motion *in limine* when the record demonstrates that defendant-appellant was denied her right to be permitted forthwith facilities to communicate with an attorney as provided by O.R.C. 2935.20.

"II.   The trial court committed reversible error when it overruled defendant-appellant's motion to suppress/motion in limine when the record demonstrates that the arresting officers advised defendant-appellant against obtaining an attorney in violation of O.R.C. 2935.20.

"III.   The trial court committed reversible error when it overruled defendant-appellant's motion to suppress/motion *in limine* when the case law interpreting O.R.C. 2935.20 demonstrates that the penalty for a violation of 2935.20 should be suppression of the blood-alcohol test.

"IV.   The trial court committed reversible error when it overruled defendant-appellant's motion to suppress/motion *in limine* when the record demonstrates that the questioning of defendant-appellant by the police officers violated defendant-appellant's due process rights as guaranteed by the Ohio Constitution and the Fourteenth Amendment to the United States Constitution."

It is undisputed that defendant expressed a desire for an attorney before refusing to sign a waiver of rights form presented by the officers.  This request was disregarded by the officers, and the booking process continued.  When confronted by the prospect of the breathalyzer test and the implied consent form one hour and fifteen minutes after her arrest, she expressed dismay at having to make such a decision without the advice of counsel.  Under these circumstances, we find the court erred in not suppressing the results of the test.

R.C. 2935.20 confers the right to counsel after arrest:

"After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel.  * * * No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit or consultation provided for by this section.  * * *"

It seems well settled under Ohio law that there is no Sixth Amendment constitutional right to counsel prior to taking a breathalyzer test.  *McNulty v.*

*Curry* (1975), 42 Ohio St.2d 341, 345, 71 O.O.2d 317, 319, 328 N.E.2d 798, 801–802; *Siegwald v. Curry* (1974), 40 Ohio App.2d 313, 314, 69 O.O.2d 293, 293–294, 319 N.E.2d 381, 382–383; *Snavely v. Dollison* (1979), 61 Ohio App.2d 140, 141, 15 O.O.3d 244, 244–245, 400 N.E.2d 415, 415–416; *CIM of Univ. Hts. v. Ward* (June 19, 1975), Cuyahoga App. No. 33984, unreported; *State v. Spencer* (Aug. 28, 1987), Geauga App. No. 1343, unreported, 1987 WL 16296; *State v. Kucsma* (Dec. 31, 1987), Lake App. No. 12–142, unreported, 1987 WL 32734.

However, we find that the trial court should have granted the motion *in limine* and excluded the breathalyzer results. Defendant has a statutory right to counsel aside from her constitutional guarantees. Under the circumstances presented here, once the officer heard the defendant say she was "scared," realized this was a "real big serious thing," and "I think I should have an attorney," he was obliged to offer "forthwith facilities to communicate with an attorney." Any other course of action or delay does not comport with the letter or purpose of the statute.

In *Raine v. Curry* (1975), 45 Ohio App.2d 155, 158, 74 O.O.2d 171, 173, 341 N.E.2d 606, 606–608, the court quotes from the opinion of Judge Robert E. Holmes in the case of *Crabtree v. Curry* (July 30, 1974), Franklin App. No. 74AP–86, unreported, at 4:

" 'The foregoing demonstrates a lack of understanding by the officer of his mandatory statutory obligation under R.C. 2935.20 to *forthwith* afford to an arrested person facilities to communicate with an attorney[.] This means that facilities for communication with an attorney must be furnished *immediately* upon request and the officer *may not delay* until it suits his convenience, his paperwork is done, or slating is completed. The testimony of the officer indicates [that] he violated R.C. 2935.20 in this instance.' " (Emphasis *sic.*)

Once the defendant expressed the desire for an attorney, the booking procedure should have stopped and her request should have been honored.

In *State v. Fullan* (Apr. 5, 1991), Portage App. No. 90–P–2192, unreported, 1991 WL 54152, a similar situation was presented. Defendant was stopped for driving with one headlight, discovered to be intoxicated, and arrested for DUI and read his rights. At the station house, he asked to call his father to contact an attorney, and it was refused before he took the breathalyzer test. The appellate court held that the refusal to grant defendant's motion *in limine* was error and stated as follows:

"However, appellant does have a statutory right to counsel upon arrest, detention or being taken into custody under R.C. 2935.20, which goes beyond the right to counsel guaranteed by the state and federal constitutions. *Kucsma,*

*supra,* at 5. Whether or not there has been a denial of the statutory right to counsel is decided on a case by case basis. *Id.* at 8.

"In the instant case, appellant did not expressly request to contact an attorney but, instead, requested to contact his father. R.C. 2935.20 mandates that appellant be permitted to ' * * * communicate with any other person of his choice for the purpose of obtaining counsel. * * *'

"The trial court overruled appellant's motion *in limine,* stating that, '[appellant] did not ask to speak with an attorney but with his father and the statute in question does not provide for a right to contact a relative. It provides you the right to consult with counsel. * * *'

"The statute on its face refutes the trial court's finding. R.C. 2935.20 grants appellant the right to contact any other person, including his father, for the purpose of obtaining counsel.

"It is clear from the foregoing that appellant was denied his statutory right and, therefore, the motion *in limine* should have been granted and the results of the breathalyzer should have been excluded." *Spencer, supra,* at 2 (Ford, J., concurring).

■ We also find that the officers' failure to provide defendant with access to an attorney not only violated R.C. 2935.20, but also violated defendant's Fourteenth Amendment right to due process. The Fourteenth Amendment states that it is unconstitutional to "deprive any person of * * * liberty * * * without due process of law." Furthermore, the Supreme Court has held that "[i]t is clear that the Due Process clause applies to the deprivation of a driver's license by the state." *Dixon v. Love* (1977), 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172, 179–180. The Supreme Court went on to state:

"Suspension of issued licenses * * * involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Id.,* citing *Bell v. Burson* (1971), 402 U.S. 535, 539, 91 S.Ct. 1586, 1590, 29 L.Ed.2d 90, 94.

■ Since the officers did violate defendant's constitutional right, the lower court erred in not excluding the evidence of the breathalyzer test results. This holding has been advanced by other Ohio appellate courts. *State v. Scarlett* (Sept. 3, 1987), Montgomery App. No. 10378, unreported, 1987 WL 16568 (court held that defendant's "constitutional guarantee to due process of law was denied her and that the appropriate sanction is suppression of the breath-alcohol test results"); *State v. Larson* (Dec. 12, 1988), Fairfield App. No. 16–CA–88, unreported, 1988 WL 138429 (court held that suppression was appropriate remedy as

"due process and fundamental fairness require that a person held on suspicion of drunk driving who requests the opportunity to communicate with counsel before submitting to, or refusing, a chemical test must be permitted to do so, as long as such communication does not interfere with the timely administering of the test"). Other courts have held suppression of the test results is the correct remedy for violating R.C. 2935.20 without even reaching the constitutional violation argument. *Fullan, supra* ("having concluded that appellant's statutory right was violated and that the evidence should have been excluded, it is not necessary for this court to further address whether the statutory violation results in a constitutional due process violation"); *Lexington v. Reddington* (1993), 86 Ohio App.3d 643, 621 N.E.2d 758 (the court held that suppression is the correct remedy for a violation of R.C. 2935.20 because "to hold otherwise would render R.C. 2935.20 utterly meaningless").

We recognize that the suspension of booking procedures may implicate an interference with the statutory requirement that the breathalyzer test must be given within two hours of arrest to protect its efficacy. R.C. 4511.19 and 4511.191. By our holding today, we are not taking a position as to whether or not the right to counsel supersedes the two-hour requirement. We find the logic of the court in *State v. Scarlett, supra,* at 18–19, to be compelling:

"We are in complete agreement with the Courts of Appeal[s] of New York and Maryland that the right to confer with counsel about whether to submit to a blood-alcohol test cannot be extended to the point of frustrating the lawful object of obtaining a breath sample within two hours of the time of arrest or a refusal to submit to a blood-alcohol test within two hours of the time of arrest. See R.C. 4511.19, 4511.191.

"In other words, consistent with his right to due process, an individual can be expected to make the decision unaided by counsel, if it can be fairly said that, given the particular circumstances, access to counsel would prevent administering a timely test, or obtaining a timely refusal.

"We further agree that broad deference must be given to the determination of the police that denial of the requested right of access to counsel was reasonably necessary for the timely administration of the blood-alcohol test.

"In this case, given the broadest deference to the police, we fail to see how Scarlett's request would have impeded them in obtaining either a timely blood-alcohol sample or a timely refusal. Scarlett was stopped at 12:55 a.m. The test was given at 2:20 a.m., one hour and twenty-five minutes after the initial stop. Although she was required to wait until after the test was administered, she was still able to contact her attorney by 2:45 a.m., ten minutes before the elapsing of the two-hour period. Had she been allowed to make her phone call prior to

deciding whether to take the test, the call would have been made at sometime around 2:20 a.m., 35 minutes before the two-hour period elapsed.

"Under these circumstances, we conclude that Scarlett's constitutional guarantee to due process of law was denied her and that the appropriate sanction is suppression of the breath-alcohol test results.  * * * "

■   Similarly, in the instant case, defendant was arrested at 1:43 a.m. and the breathalyzer test was not administered until 3:00 a.m.   Had her request for counsel been heeded at the outset of the booking procedures, there would have been ample time to allow attorney-client communication and still proceed with the test.   Even if the time available was not adequate to allow the attorney's physical presence, the defendant's rights could have been preserved by telephone communication.

We do not find persuasive the city's argument that defendant did not press her request for an attorney when the breathalyzer test was proposed.   Her earlier request for an attorney having been ignored, she was under the pressure of "time constraints" (the two-hour period) that were not of her making.   The police officer should have "forthwith" offered her a telephone to call her attorney early in the process.   They cannot reward that failure by later arguing that the time was too short.

Defendant's assignments of error are sustained.

The judgment of conviction is reversed and the case is remanded for a new trial consistent with the principles enunciated in this opinion.

*Judgment reversed*
*and cause remanded.*

MATIA, P.J., concurs.

NUGENT, J., dissents.

NUGENT, Judge, dissenting.

I respectfully dissent from the majority's decision to reverse appellant's conviction and remand the cause for a new trial.   After a thorough view of the record before this court, I believe the trial court did not err in finding that appellant's right to counsel pursuant to R.C. 2935.20 was not violated.   Moreover, I do not believe that violation of a statutory right to counsel, if found (and I do not believe the evidence supports such a finding), will result in a due process violation requiring the suppression of the results of a breathalyzer test.

Initially, I must take issue with the majority's assertion that "[i]t is undisputed that defendant expressed a desire for an attorney before refusing to sign a waiver

of rights form presented by the officers. This request was disregarded by the officers and the booking process continued." The issues of whether appellant was informed of her right to counsel and whether she was provided an opportunity to speak with counsel were fully litigated in the court below. After hearing all of the evidence and arguments of counsel, the trial court made the following findings in its judgment entry overruling appellant's motion:

"At the hearing in the present case a tape recording of the entire booking procedure was admitted into evidence by stipulation of the parties. The evidence presented at the hearing shows that the defendant was informed of her right to counsel when she was brought to the Lakewood Police Station. The rights were fully read by Officer Trommer, the arresting officer. The defendant was reluctant to sign the waiver of rights form and raised the issue of consulting with an attorney. The defendant did not ask to speak to an attorney prior to completing the booking procedure, but instead, proceeded to give the police officers basic health and other background information about herself.

"During the course of the booking procedure the defendant attempted to place calls to both her fiance and her sister, and ultimately was able to contact her father by telephone. The evidence also shows that on two separate instances Officer Boomer asked the defendant for a name of someone to call in order to post bond.

"At the time of the administration of the breath/alcohol test, the defendant was read the implied consent orally by Officer Trommer. The defendant asked if she could consult with an attorney and Officer Boomer responded by asking her for the telephone number of her attorney. The defendant did not want to contact her attorney at that time. When informed of the time constraints to take the test, she agreed to do so without consulting counsel.

"A review of the record shows that Officers Boomer and Trommer fully explained the right to counsel and provided numerous opportunities for the defendant to contact counsel. The decision not to contact an attorney was made by the defendant, after full disclosure and opportunity to do so. The facts in this case distinguish it from both *Scarlett, supra,* and *Fullan, supra,* in which the police did not permit the defendant to make a telephone call until after the breath/alcohol test was administered. In the present case the police not only provided the defendant with the ability to make phone calls prior to the breath/alcohol test, but also repeatedly initiated the process.

"Based upon the foregoing, the Court finds that there was no denial of right to counsel, under Ohio Rev.Code Sec. 2935.20 or either the Ohio or Federal Constitutions. Accordingly, the defendant's motion *in limine* and motion to suppress are overruled."

Based on the trial court's express findings, it is beyond cavil to suggest that the police officers disregarded appellant's expressed desire for an attorney. It is axiomatic that, at a suppression hearing, the evaluation of evidence and the credibility of the witnesses are issues to be decided by the trier of fact. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981–982, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 57–58, 437 N.E.2d 583, 584–585. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411–412, 461 N.E.2d 1273, 1276.

Appellate courts are bound to accept a trial court's findings of fact, which must be stated on the record, see Crim.R. 12(E), if they are supported by competent, credible evidence. *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141, 1142–1143. Accepting those facts as true, an appellate court must independently determine, as a matter of law, without deference to a trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *Id.*

A review of the record *sub judice* leads me to conclude that appellant was not denied right to counsel under R.C. 2935.20. Appellant's first comment concerning her right to counsel came shortly after the booking procedure commenced. An audiotape of the booking procedure was admitted at the hearing and reveals the following:

"OFFICER TROMMER: All it states is that you're going to answer our questions, and you never really give up your rights. If at any time you want to stop answering questions, you can stop answering questions.

"MS. WASELENCHUK: I'm scared. This sounds like I'm up under a real big serious thing, and I think I should have an attorney (inaudible)[.]

"OFFICER BOOMER: You don't need to sign it now. That's fine.

"MS. WASELENCHUK: I'd rather just not (inaudible)."

If, at this point, the record reflected that appellant was administered the breathalyzer test, it might be concluded that appellant was not provided an opportunity to consult with counsel. However, the record reveals that appellant was afforded an adequate opportunity to consult with counsel prior to voluntarily taking the breathalyzer test. After the above exchange, the officers continued to ask appellant informational questions, which she voluntarily answered in an attempt to cooperate. As the booking procedure progressed, appellant was

permitted to make phone calls to her fiance, her sister, and her father in order to arrange bond.

After the booking procedure was complete, Officer Trommer read appellant Ohio's implied consent law and asked her if she would consent to a breathalyzer test. The following exchange took place:

"MS. WASELENCHUK: I don't want to lose my license for a year. God, and I have to decide this without a lawyer?

"OFFICER BOOMER: Do you have a phone number of a lawyer you want to call?"

Although the above exchange took place approximately one hour and fifteen minutes after the arrest, leaving approximately forty-five minutes remaining in which appellant could be administered the test, appellant declined to contact an attorney. Nonetheless, the majority concludes that "[e]ven if the time available was not adequate to allow the attorney's physical presence, the defendant's rights could have been preserved by telephone communication."

I believe sufficient evidence exists supporting the trial court's conclusion that appellant was not deprived of her statutory right to counsel. The record is clear that appellant was afforded an opportunity to contact an attorney by phone with more than sufficient time, approximately forty-five minutes, to consult with an attorney. Additionally, I believe the entire record supports the trial court's conclusion that the "decision not to contact an attorney was made by the defendant, after full disclosure and opportunity to do so."

The record clearly reflects that appellant was made aware of her right to counsel early on in the booking procedure. Appellant made at least three phone calls: one to her fiance, one to her sister, and one to her father. Nothing in the record reveals that appellant was prohibited from contacting an attorney during the time in which she made the above phone calls. It is undisputed that, at this time, appellant was aware of her right to an attorney and that she could have called an attorney or had her father or anyone else she wanted to call to contact an attorney. Finally, Officer Boomer clearly asked her if she had the number of an attorney that she would like to contact. She responded that she did not and proceeded to voluntarily take the breathalyzer test.

I further believe that the majority's conclusion that a violation of appellant's statutory right to counsel under R.C. 2935.20 amounts to a denial of due process is misplaced, both factually and legally. First, as explained previously, I do not believe appellant was denied her statutory right to counsel. Additionally, even if a denial of the statutory right to counsel amounts to a violation of appellant's due process rights, which I dispute, I believe the facts *sub judice* refute the majority's conclusion that appellant's due process rights were violated. In this vein, the

majority's reliance on *State v. Scarlett* (Sept. 3, 1987), Montgomery App. No. 10378, unreported, 1987 WL 16568, and *State v. Larson* (Dec. 12, 1988), Fairfield App. No. 16–CA–88, unreported, 1988 WL 138429, is misplaced. In *Scarlett*, the court of appeals implied that if Scarlett had been permitted to contact her attorney thirty-five minutes before the expiration of the two-hour period, as she requested, due process would not have been violated, since the blood-alcohol test could still have been timely administered. *Id.* at 18–19. As it turned out, Scarlett was able to contact her attorney within the two-hour time limit but only after the test had been administered.

In *Larson*, the court of appeals found a due process violation only after the police officer told Larson "she was not entitled to have an attorney." *Larson, supra*, at 2. As a result, Larson did not ask to make a telephone call, and no telephone was made available.

Unlike *Scarlett* and *Larson*, the facts in the present case do not demonstrate that appellant was denied an opportunity to consult with an attorney prior to taking the breathalyzer test. As was implicit in *Scarlett*, no due process violation occurred, since appellant herein was afforded an opportunity to contact an attorney by phone prior to taking the breathalyzer test.

Finally, I do not believe that a violation of a statutorily created right to counsel amounts to a constitutional due process violation that would require suppression of the breathalyzer test results. The majority accurately sets forth the basic proposition that there is no Sixth Amendment constitutional right to counsel prior to taking a breathalyzer test. *McNulty v. Curry* (1975), 42 Ohio St.2d 341, 345, 71 O.O.2d 317, 319, 328 N.E.2d 798, 801–802; *Snavely v. Dollison* (1978), 61 Ohio App.2d 140, 141, 15 O.O.3d 244, 244–245, 400 N.E.2d 415, 415–416; *CIM of Univ. Hts. v. Ward* (June 19, 1975), Cuyahoga App. No. 33984, unreported. The Ohio Supreme Court in *McNulty v. Curry, supra*, held that the stage of an investigation where a defendant is requested to undergo a breathalyzer test is not a "critical stage" and, therefore, there was no constitutional right to counsel. Since there was no constitutional violation, the exclusionary rule is not applicable and, therefore, suppression of the evidence was not required. *Id.;* see, also, *State v. Meyers* (1990), 66 Ohio App.3d 717, 721, 586 N.E.2d 155, 157–158. More recently, the Ohio Supreme Court has reaffirmed the long-standing principle that a violation of a statutorily created right does not require suppression of evidence absent any constitutional infringement. *State v. Hill* (1992), 64 Ohio St.3d 313, 321, 595 N.E.2d 884, 892; see, also, *State v. Geraldo* (1981), 68 Ohio St.2d 120, 128–129, 22 O.O.3d 366, 371–372, 429 N.E.2d 141, 147–148; *Kettering v. Hollen* (1980), 64 Ohio St.2d 233, 18 O.O.3d 435, 416 N.E.2d 598; *State v. Unger* (1981), 67 Ohio St.2d 65, 70, 21 O.O.3d 41, 44–45, 423 N.E.2d 1078, 1081–1082.

Moreover, it is generally well accepted that Ohio does not recognize the application of the exclusionary rule to violations of R.C. 2935.20 in prosecutions for driving under the influence. *Columbus v. Reid* (1986), 32 Ohio App.3d 7, 513 N.E.2d 351. Until today, this court has followed the general rule. *State v. Harris* (Dec. 26, 1976), Cuyahoga App. No. 35274, unreported, at 6. As Judge Whiteside explained in his concurring opinion in *Columbus v. Reid, supra,* at 9, 513 N.E.2d at 353:

" * * * This court has previously addressed the basic issue stating in *State v. Royster* (Aug. 26, 1975), No. 75AP–195, unreported, at 8–9:

" ' * * * The exclusionary rule as to statements made by a person arrested is predicated upon constitutional principles; namely, the constitutional principles of right to counsel and against self-incrimination. There is no corresponding exclusionary rule with regard to statutory violations. Neither R.C. 2935.14 nor 2935.20 excludes evidence by way of statement of the person arrested or otherwise, even if the statutes were violated. * * *'

"As indicated in the majority opinion, the exclusionary rule was fashioned by the United States Supreme Court as a means of enforcing certain constitutional rights afforded by the United States Constitution. No reason has been demonstrated for extension of an exclusionary rule to statutory violations. There is no reason or authority for imposition of an exclusionary rule to violation of R.C. 2935.20."

More recently, the Twelfth District Court of Appeals reaffirmed the principle of *Columbus v. Reid* that a police officer's failure to advise a defendant of her right to counsel does not require suppression of breath/alcohol test results. See *Mason v. Albertson* (May 4, 1992), Warren App. No. CA91–07–59, unreported, 1992 WL 93075. For the reasons stated in *Columbus v. Reid,* I would conclude that the exclusionary rule does not apply to violations of the statutorily created right to counsel prior to taking a breathalyzer exam.

Despite the general rule prohibiting application of the exclusionary rule to statutory violations, the majority concludes that the breathalyzer test results should still be excluded based on the premise that a violation of a statutory right to counsel amounts to a violation of the Due Process Clause of the Fourteenth Amendment. On its face, the Due Process Clause provides that "nor shall any State deprive any persons of life, liberty, or property, without due process of law * * *."

In order to determine whether a due process violation which is premised on an alleged violation of a statutory right to counsel has occurred, a review of the constitutional right to counsel is warranted. To begin, it must be noted that the constitutional right to counsel is derived from two sources within the United

States Constitution. See *Rhode Island v. Innis* (1980), 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297; and *United States v. Henry* (1980), 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115.

First, the Fifth Amendment's privilege against self-incrimination contemplates certain procedural safeguards, including the right to the presence of an attorney. *Miranda v. Arizona* (1966), 384 U.S. 436, 478, 86 S.Ct. 1602, 1629–1630, 16 L.Ed.2d 694, 725–726. These procedural safeguards attach any time a defendant is interrogated after being taken into custody. *Id.; Illinois v. Perkins* (1990), 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243. The privilege against self-incrimination "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial nature." *Pennsylvania v. Muniz* (1990), 496 U.S. 582, 589, 110 S.Ct. 2638, 2643, 110 L.Ed.2d 528, 543–544. It does not protect a suspect from being compelled by the state to produce real or physical evidence. *Id.*

Second, the Sixth Amendment provides defendants with the right to counsel once formal proceedings have been initiated. *Massiah v. United States* (1964), 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246; and *Brewer v. Williams* (1975), 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424. The right to counsel under the Sixth Amendment attaches to critical stages of the proceedings. *United States v. Wade* (1967), 388 U.S. 218, 224, 87 S.Ct. 1926, 1930–1931, 18 L.Ed.2d 1149, 1155–1156.

As will be seen, the issue of whether various provisions of the United States Constitution are offended by the involuntary administration of blood-alcohol tests or breathalyzer tests has been thoroughly explored by the United States Supreme Court.

In *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, the United States Supreme Court concluded that California did not violate the defendant's Fourteenth Amendment due process rights by extracting a blood sample from the defendant, who was suspected of driving an automobile while under the influence of intoxicating liquor, despite his refusal to consent. Citing its previous decision in *Braithaupt v. Abram* (1956), 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448, in which the same issue was explored, the court explained that under such circumstances, "the withdrawal did not offend that 'sense of justice' of which we spoke in *Rochin v. California* (1951), 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183." *Schmerber, supra,* 384 U.S. at 760, 86 S.Ct. at 1830, 16 L.Ed.2d at 913.

The *Schmerber* court also explored the issue of whether the involuntary administration of a blood-alcohol test violated other provisions of the federal Constitution. The court concluded that neither the Fifth Amendment's privilege against self-incrimination nor the Fourth Amendment's prohibition against unreasonable searches and seizures prohibits an officer from withdrawing a blood

sample from a defendant, despite his lack of consent, where probable cause exists for the search and seizure of the blood sample. The *Schmerber* court also concluded that the defendant's Sixth Amendment right to counsel was not violated, since the defendant had no right to refuse to take the test. See, also, *State v. Henderson* (1990), 51 Ohio St.3d 54, 57, 554 N.E.2d 104, 108 ("The nonverbal results of appellee's breathalyzer and field sobriety tests are not self-incriminating statements * * * and are not rendered inadmissible by the *Miranda* violations."); *State v. Brandenburg* (1987), 41 Ohio App.3d 109, 534 N.E.2d 906; and *State v. Feasel* (1988), 41 Ohio App.3d 155, 534 N.E.2d 940.

Additionally, in *South Dakota v. Neville* (1983), 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748, the Supreme Court held that South Dakota's implied consent law, which specifically provided that the refusal to submit to a blood-alcohol test may be admissible into evidence at the trial for drunk driving, does not violate a defendant's Fifth Amendment constitutional privilege against self-incrimination. See, also, *State v. Rollyson* (1984), 20 Ohio App.3d 336, 20 OBR 439, 486 N.E.2d 838 ("Statements refusing to take the breath and/or urine tests are not protected against self-incrimination and, thus, are admissible." *Id.*, paragraph one of syllabus; *South Dakota v. Neville, supra,* followed.).

More recently, the United States Supreme Court reaffirmed the principle that remarks made during standardized booking procedures are admissible, notwithstanding the failure of the police to provide *Miranda* warnings, so long as the statements are not testimonial in nature and made while in custody. *Pennsylvania v. Muniz* (1990), 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528. Thus, remarks made by a DUI suspect in connection with videotaped efforts to perform sobriety tests and regarding his refusal to take a breathalyzer test were admissible and did not implicate the Fifth Amendment's privilege against self-incrimination. *Id.*

Chemical or breath testing of individuals suspected of driving while intoxicated has been upheld against constitutional attack in numerous other settings. In *Michigan v. Sitz* (1990), 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412, the United States Supreme Court upheld the constitutionality of sobriety checkpoints, against a Fourth Amendment attack, in light of the state's interests in preventing harm from drunk drivers. The United States Supreme Court has also upheld the constitutionality of the license-suspension provisions of an implied consent law against procedural due process challenges contesting the lack of a prior hearing in *Mackey v. Montrym* (1979), 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321.

Finally, the case of *Dixon v. Love* (1977), 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172, cited by the majority, does little to support the majority's analysis. In *Dixon,* the Supreme Court concluded that the procedures used by Illinois to suspend or revoke the license of a driver who repeatedly had been convicted of

traffic offenses did not violate the procedural Due Process Clause of the Fourteenth Amendment. Moreover, the Supreme Court relied on *Dixon* in concluding in *Mackey v. Montrym* that the license suspension provisions of an implied consent law did not violate procedural due process.

In light of the foregoing analysis of the dearth of constitutional rights implicated by the administration of a breathalyzer test, it is readily apparent that the majority's conclusion that a due process violation exists is an attempt to bootstrap a statutory violation into a constitutional violation when a constitutional violation would not otherwise exist. As there exists no Fourth, Fifth, Sixth, or Fourteenth Amendment constitutional right to refuse to take a breathalyzer test or to consult with an attorney prior to taking such test, it hardly seems reasonable to conclude that a violation of an extraconstitutional, statutory right can result in a violation of due process under the Fourteenth Amendment warranting suppression of the evidence. In this vein, it is wise to remember Justice Frankfurter's admonition in *Rochin v. California, supra,* that "Due Process of law * * * is not to be turned into a destructive dogma against the states in the administration of their systems of criminal justice." *Id.,* 342 U.S. at 168, 72 S.Ct. at 208, 96 L.Ed. at 188.

The question, then, of what "process" is "due" when considering a violation of a statutorily created right turns on the very statute which creates that right. Since the present right to counsel pursuant to R.C. 2935.20 is not required by the United States and Ohio Constitutions, the statutorily created right to counsel is accompanied by the procedural limitations included in the right. *Arnett v. Kennedy* (1974), 416 U.S. 134, 153–154, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15, 32–33 ("Where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant * * * must take the bitter with the sweet."). Thus, when the Ohio legislature adopted R.C. 2935.20, it determined that certain procedural limitations were to accompany the grant of the right to consult an attorney. The procedural limitations included in the statutorily created right prohibit the application of the exclusionary rule under long-held principles applying the exclusionary rule to constitutional violations and by specifically limiting the remedy for such violations to a fine not less than $25 nor more than $100 or imprisonment for not more than thirty days, or both, for those who violate a person's right to counsel.

By enacting Ohio's right-to-counsel statute, the Ohio legislature clearly attempted to provide Ohioans with a substantive right to counsel where such right is not otherwise constitutionally required. This right to counsel does not come without some limitations (as described above), nor does it come without some teeth. The statute is clearly designed to afford those under arrest, detention or custody a right to counsel and that the police must provide the suspect with facilities (1) to communicate with an attorney of his choice who is licensed to

practice in the courts of this state, or (2) to communicate with any other person of his choice for the purpose of obtaining counsel. Such person is also entitled to consult with his attorney in private. No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation.

Finally, the statute comes with some very substantial penalties against an officer or other agent of this state who violates this section. As stated above, the penalties shall be not less than $25 nor more than $100 or imprisonment for not more than thirty days, or both, for those who violate this section. Such penalties can be assessed after the issue is raised by either the aggrieved party or the appropriate authorities following an independent judicial inquiry finding that such a violation of the statute has occurred.

By the stroke of a pen, the majority adds the remedy of suppression of the breathalyzer test results to the penalties expressly provided by the statute. Conceivably, then, not only could the individual police officer be penalized pursuant to the statute, but also the public penalized and the accused rewarded by having test results suppressed pursuant to the majority's opinion.

The result reached today by the majority, however, could justifiably lead the Ohio legislature to conclude that the right to counsel pursuant to R.C. 2935.20, as interpreted by this court and other courts applying the *Scarlett* and *Larson* rationale, unnecessarily hinders the prosecution in enforcement of Ohio's DUI laws. The General Assembly could, consequently, determine to repeal that portion of Ohio's right-to-counsel statute to make it clear that a DUI suspect does not have a right to consult with counsel prior to taking a breathalyzer test without offending the United States and Ohio Constitutions. See *Schmerber*, and *McNulty v. Curry, supra.* The result reached today by judicial fiat could ultimately cost Ohioans the benefit of a well-intended law passed by the legislature to provide legal counsel, where it is otherwise not constitutionally required, to those unfortunate enough (or careless enough) to be caught in a precarious legal predicament with substantial and real attendant penalties attached thereto.

Therefore, based on the foregoing, I would overrule appellant's assignments of error and affirm the judgment of the Lakewood Municipal Court.