**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50600**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: January 14, 2025** |
| **Plaintiff-Respondent,** | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| EDWIN E. NELSON, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| **Defendant-Appellant.** | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Teton County. Hon. Steven W. Boyce, District Judge.

Judgment of conviction for felony driving under the influence and resisting or obstructing an officer, affirmed.

Murray, Ziel & Johnston, PLLC; Paul D. Ziel, Idaho Falls, for appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Chief Judge

Edwin E. Nelson appeals from his judgment of conviction for felony driving under the influence and resisting or obstructing an officer. We affirm.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

In February 2019, Deputy Sewell discovered Nelson's vehicle stuck in a snowbank with the engine running. Nelson exhibited signs of intoxication, including slurred speech, glassy eyes, impaired memory, and difficulty maintaining balance. Nelson refused to participate in field sobriety or breath tests. After obtaining a warrant, deputies forcibly took a blood sample, which confirmed Nelson's intoxication. Nelson was arrested and charged with felony DUI, Idaho Code § 18-8004; resisting/obstructing officers, I.C. § 18-705; and possession of an open container, I.C. § 23-505(2).

1

Nelson challenged the evidence against him, filing multiple motions to suppress and motions in limine. Nelson argued that Deputy Sewell "had no reasonable suspicion to conduct an investigatory stop of [him]." Following a hearing, the district court denied Nelson's suppression motion. The district court concluded: (1) Deputy Sewell's initial contact with Nelson was consensual; (2) Deputy Sewell's contact with Nelson did not violate the "community caretaking" function; and (3) soon after contacting Nelson, Deputy Sewell developed reasonable suspicion to detain Nelson to investigate whether he was in physical control of his vehicle while under the influence of alcohol.

Nelson also claimed that his blood was taken unconstitutionally and that the chain of custody of the blood draw evidence was compromised. Nelson attempted to exclude the blood alcohol content (BAC) test results by presenting expert testimony questioning the reliability of the testing procedures and handling of the blood samples. The district court denied Nelson's challenge and allowed the blood test evidence to be admitted. The district court also limited the testimony of Nelson's expert as to the blood draw and handling issues.

Nelson further contended that he was denied counsel and the opportunity to independently test the blood. The district court denied Nelson's claims that his due process rights were violated by not being allowed to contact an attorney immediately after his arrest. The district court also rejected Nelson's claims relative to the timeliness of the return of the search warrant. At trial, Nelson objected to one of the State's rebuttal witnesses, claiming the State's disclosure of the witness was not timely; the district court overruled the objection. Nelson was convicted of felony DUI and resisting or obstructing an officer. Nelson appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Where a defendant claims that his or her right to due process was violated, we defer to the trial court's findings of fact, if supported by substantial evidence. *State v. Smith*, 135 Idaho 712, 720, 23 P.3d 786, 794 (Ct. App. 2001). However, we freely review the application of constitutional principles to those facts found. *Id.* Over questions of law, we exercise free review. *State v. O'Neill*, 118 Idaho 244, 245, 796 P.2d 121, 122 (1990).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Nelson raises several issues on appeal: (1) whether Deputy Sewell had reasonable, articulable suspicion to investigate Nelson, and whether his actions fell within the scope of the community caretaking function; (2) whether Nelson's Fifth Amendment rights were violated due to denial of access to legal counsel at the time of his arrest, and whether he had a meaningful opportunity to independently test his blood; (3) whether his due process rights were infringed by the late return of the search warrant; (4) whether the district court erred by limiting Nelson's expert witness testimony; and (5) whether the district court abused its discretion by allowing a late disclosed rebuttal witness to testify.

**A.      Initial Encounter**

Nelson argues that Deputy Sewell lacked reasonable articulable suspicion to conduct an investigatory stop. Nelson also contends the district court erred in finding that Deputy Sewell's contact with Nelson was justified as a community caretaking function because his subjective belief that Nelson's vehicle may have been stuck in the snow was not reasonable in view of all the surrounding circumstances. The State contends that the initial encounter was consensual.

The Fourth Amendment to the United States Constitution prohibits unreasonable seizures. U.S. CONST. amend. IV. When a defendant seeks to suppress evidence allegedly obtained as a result of an illegal seizure, the burden of proving that a seizure occurred is on the defendant. *State v. Page*, 140 Idaho 841, 843, 103 P.3d 454, 456 (2004). The test to determine if an individual is seized for Fourth Amendment purposes is an objective one. *State v. Willoughby*, 147 Idaho 482,

3

486, 211 P.3d 91, 95 (2009). A seizure occurs only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *State v. Baker*, 141 Idaho 163, 165, 107 P.3d 1214, 1216 (2004).

An encounter between a law enforcement officer and a citizen does not trigger Fourth Amendment scrutiny unless it is nonconsensual. *Willoughby*, 147 Idaho at 486, 211 P.3d at 95. A seizure under the meaning of the Fourth Amendment occurs only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. *Id*. Thus, unless the officer conveys a message that compliance is required, the encounter is deemed consensual. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). While most citizens will respond to a police request, the fact that people do so and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response. *State v. Nelson*, 134 Idaho 675, 679, 8 P.3d 670, 674 (Ct. App. 2000).

Furthermore, an officer does not affect a seizure merely by approaching a person and asking questions. *Page*, 140 Idaho at 844, 103 P.3d at 457. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *State v. Pieper*, 163 Idaho 732, 734, 418 P.3d 1241, 1243 (Ct. App. 2018). This is so because the person approached need not answer any question put to him and may decline to listen to the questions at all and go about his business. *State v. Osborne*, 121 Idaho 520, 523-524, 826 P.2d 481, 484-485 (Ct. App. 1991).

The district court rejected Nelson's claim that Deputy Sewell's initial contact with him constituted a seizure. Deputy Newell observed Nelson's vehicle at approximately 1:20 a.m. while patrolling. There was snow on the road. The district court found that Nelson's vehicle was already stopped, and "the officer did not detain the vehicle because it appeared the vehicle was unable to leave." Nelson's vehicle had crashed or got stuck in a snowbank, and there was evidence of disturbed snow as if Nelson attempted to get unstuck. Additionally, the window of the vehicle was down, which allowed the deputy to speak to Nelson without any directives. The district court found that the initial contact between Deputy Sewell and Nelson was consensual up to the point, as the State agrees, Nelson was instructed to keep his hands where Deputy Sewell could see them. By then, Deputy Sewell had reasonable suspicion that Nelson was driving under the influence.

On appeal, Nelson contends that he was unlawfully seized because: (1) Deputy Sewell activated his spotlight that was mounted on his patrol vehicle; (2) Deputy Sewell parked his vehicle

4

not far in front of Nelson's vehicle blocking his exit, and a second police vehicle parked behind Nelson, showing an increased show of authority; and (3) Nelson submitted to Deputy Sewell's authority. Deputy Sewell's use of his car door spotlight did not create a show of authority. *See Baker*, 141 Idaho at 165, 107 P.3d at 1216 (holding that an officer did not seize the defendant by approaching the defendant's car after using a spotlight to illuminate it). While activation of a patrol car's overhead lights is a "significant factor" that may indicate a seizure, Deputy Sewell did not do so. *Willoughby*, 147 Idaho at 487, 211 P.3d at 96. Further, Nelson points to no evidence that the position of the police vehicles blocked his exit, and the district court rejected this assertion as part of its factual findings. Similarly, Deputy Sewell made no commands, and Nelson did nothing to submit to police authority during the encounter prior to Deputy Sewell instructing Nelson to keep his hands where he could see them. The interaction prior to that time was consensual.

As he did below, Nelson also argues that the district court erred by not finding that there was a violation of the community caretaking function. As there was no seizure before Deputy Sewell developed reasonable suspicion to investigate driving while intoxicated, application of the community caretaking exception is unnecessary. Nonetheless, Nelson fails to show that the district court erred in recognizing that Deputy Sewell's initial contact with Nelson also fell under the community caretaking function.

Idaho has adopted a totality of circumstances test for community caretaking function cases. *State v. Wixom*, 130 Idaho 752, 754, 947 P.2d 1000, 1002 (1997). The constitutional standard is whether the intrusive action of the police was reasonable in view of all the surrounding circumstances. *Id.* Reasonableness is determined by balancing the public need and interest furthered by the police conduct against the degree and nature of the intrusion upon the privacy of the citizen. *State v. Godwin*, 121 Idaho 491, 495, 826 P.2d 452, 456 (1992). For the community caretaking function analysis to apply, the officer must have a subjective belief that an individual needs immediate assistance, though the officer may reserve at least some expectation of detecting or finding evidence of a crime. *State v. Deccio*, 136 Idaho 442, 445, 34 P.3d 1125, 1128 (Ct. App. 2001).

The district court held:

> So, the court finds the nature and degree of the intrusion was very minimal in this case. And in applying the totality of the circumstances, the court does find that, if the officer were to say this was part of his community caretaking function,

5

that is supported by the facts found, in that the vehicle appeared to have either crashed or been stuck; the window was down; it was very cold outside; the occupant seemed to be gazing off.

And based on those circumstances, the officer had a right to at least approach and make sure that the occupant of the vehicle was okay. So, I don't find that the community caretaking function would apply in this case to suppress or exclude any evidence.

Nelson's argument relies solely on *State v. Schmidt*, 137 Idaho 301, 302, 47 P.3d 1271, 1272 (Ct. App. 2002), where a police officer investigated a vehicle stopped in a pullout area. The officer had not received notice from dispatch that there was an emergency involving a stranded vehicle, nor were there any marks on the roadway indicating an accident had occurred. *Id.* at 304, 47 P.3d at 1274. Nelson contends that the facts between *Schmidt* and his case are "eerily similar." We disagree. In *Schmidt*, the Court noted that the vehicle was stopped in a pullout at least twenty feet from the roadway; the road was not icy or snow covered; the vehicle did not have any apparent damage; it occurred in the evening; and it was off the roadway and not a safety hazard. *Id.* In the instant case, Nelson's vehicle was either stuck or crashed; it was late at night; there was snow on the street; the vehicle was partially obstructing the road; and there was steam or smoke coming from the vehicle, as well as fresh damage to the door of the vehicle.

Nelson has not shown that the district court erred in determining that the initial encounter between Deputy Sewell and Nelson was consensual and, in any event, reasonably part of Deputy Sewell's community caretaking function. Nelson does not claim that Deputy Sewell was without reasonable suspicion to conduct a "driving while intoxicated investigation" at the time Deputy Sewell told Nelson to keep his hands on the wheel. By that time, Deputy Sewell had smelled a strong odor of alcohol coming from the inside of the vehicle and observed that Nelson appeared to be intoxicated, had slurred speech, glassy eyes, and a blank stare or glaze. The district court did not err in denying Nelson's motion to suppress.

## B.     Fifth Amendment

Nelson claims that his Fifth Amendment rights were violated after his arrest when he was denied access to legal counsel and an opportunity to independently test the blood draw evidence. The State responds that the district court correctly concluded that Nelson did not have a pre-blood draw right to consult legal counsel and was not denied his right to obtain independent testing. We agree with the State.

Individuals charged with an alcohol-related driving offense have a constitutional right to gather exculpatory evidence under the due process clause of the Fourteenth Amendment, *State v. Carr*, 128 Idaho 181, 184, 911 P.2d 774, 777 (Ct. App. 1995), and a qualified statutory right to obtain additional, independent BAC testing under I.C. § 18-8002A(6), *State v. Hedges*, 143 Idaho 884, 886-87, 154 P.3d 1074, 1076-77 (Ct. App. 2007). Idaho Code § 18-8002A(6) provides:

> Additional tests. After submitting to evidentiary testing at the request of the peace officer, the person may, when practicable, at his own expense, have additional tests for alcohol concentration or for the presence of drugs or other intoxicating substances made by a person of his own choosing. The person's failure or inability to obtain additional tests shall not preclude admission of the results of evidentiary tests administered at the direction of the peace officer unless additional testing was denied by the peace officer.

Pursuant to I.C. § 18-8002(2), DUI arrestees have no right to access a phone or to call a lawyer before a BAC test is administered. *State v. Green*, 149 Idaho 706, 710, 239 P.3d 811, 815 (Ct. App. 2010). It is well established that to invoke the statutory right to independent testing, the DUI arrestees must do so explicitly. *Hedges*, 143 Idaho at 888, 154 P.3d at 1078 (once informed of this right, a defendant must make a clear and unambiguous statement of his or her desire to obtain an independent BAC test, such that a reasonable police officer under the circumstances would understand the statement to be an affirmative assertion thereof). Once requested, the defendant must at least be afforded a telephone call, *Carr*, 128 Idaho at 184, 911 P.2d at 777; and officers have a duty, at a minimum, to not affirmatively deny or materially interfere with the individual's right to gather potentially exculpatory evidence to refute the State's charge of intoxication, *Hedges*, 143 Idaho at 888, 154 P.3d at 1078. If an action that results in an individual's inability to gather potentially exculpatory evidence is not attributable to the State, suppression is not warranted. *See State v. Cantrell*, 139 Idaho 409, 412, 80 P.3d 345, 348 (Ct. App. 2003) (the delay in release from jail was not attributable to the State because the officers were not interfering or preventing defendant's release); *State v. Shelton*, 129 Idaho 877, 880, 934 P.2d 943, 946 (Ct. App. 1997) (because defendant did not affirmatively exercise his right to an independent BAC test, the State did not violate his rights).

Nelson argues that he made multiple requests to speak with an attorney prior to the BAC testing and that those requests were ignored. It is undisputed, as the district court held, that Nelson made multiple requests to speak with an attorney prior to his blood draw and arrest, although he did not mention an intent to seek independent blood testing. However, since Nelson had no right

7

to call a lawyer before the BAC test was administered, there was no violation of his due process rights based upon these requests. Both the statutory and case language indicate that a DUI arrestee has no right to contact an attorney prior to evidentiary testing. I.C. § 18-8002(2); *State v. Stegall*, 167 Idaho 918, 924, 477 P.3d 972, 978 (2020).

The district court found that Nelson did not make an unequivocal request after the blood draw to either: (1) call an attorney; or (2) arrange for independent testing of his blood. Nelson correctly notes that "*after* administration of the evidentiary BAC test, a defendant cannot be denied access to a telephone *upon request* to arrange for an independent test." (Emphasis added.) However, Nelson never requested to contact an attorney or have independent testing done after the administration of the BAC test.

Nelson's main argument appears to be that because he asked to speak with an attorney multiple times before his blood draw, the officers were required to make arrangements for him to contact his attorney once the blood draw was complete. Nelson asserts that Deputy Sewell violated his rights by not making arrangements for him to make a phone call, contact an attorney, or secure independent blood testing.[1] Nelson cites no authority for this claim. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).[2] Moreover, these arguments are contrary to the legal standards set forth above.

---

[1]    Nelson argues that he was further denied the ability to make a phone call, to procure help to contact an attorney, or arrange for independent testing once he was transferred from Teton County and booked into the Madison County jail, a significant distance away. None of these claims are supported by evidence in the record. Further, Nelson provides no citations to the record for this Court to find such information. This Court will not search the record on appeal for the necessary citations or arguments. *See Dickenson v. Benewah Cnty. Sheriff*, 172 Idaho 144, 150, 530 P.3d 691, 697 (2023). Nelson makes no showing that the officers affirmatively denied or materially interfered with his right to gather potentially exculpatory evidence. *State v. Hedges*, 143 Idaho, 844, 888, 154 P.3d 1074, 1078 (Ct. App. 2007).

[2]    As the district court noted, the Court in *Stegall* stated that a DUI suspect's request to call an attorney prior to a BAC test "can still help to inform State actors as to the purpose of a subsequent request." *State v. Stegall*, 167 Idaho 918, 924, 477 P.3d 972, 978 (2020). However, there, Stegall made multiple requests to call a lawyer after the blood draw and the issue was relating the substance of his requests prior to the blood draw to the purpose of his requests made after the blood draw. *Id.* Since Nelson never requested to speak to a lawyer or secure independent blood evidence after the blood draw, his prior requests did not inform any post-blood draw statements or requests.

Nelson failed to show the district court erred in determining that his Fifth Amendment right to counsel was not violated. Likewise, the district court was correct in deciding that Nelson was not denied a meaningful opportunity to have his blood independently tested.

## C.    Late Return of Warrant

Nelson claims his due process rights were violated by the late return of the search warrant pertaining to his blood draw. Nelson contends that due to the late return of the warrant he was "undoubtedly" delayed in his ability to independently test the blood.

The warrant was received by Deputy Sewell on February 2, 2019, and filed with the district court on June 6, 2019. It is conceded by both parties that there was a four-month delay between the time the warrant was issued and when it was returned to the court, which is a violation of I.C. § 19-4415[3] and Rule 41(e)(3)[4] of the Idaho Rules of Criminal Procedure. An improperly returned warrant is a ministerial error. Absent a showing of prejudice by the defendant, such an error does not compel relief. *State v. Hagedorn*, 129 Idaho 155, 160, 922 P.2d 1081, 1086 (Ct. App. 1996); *State v. Bussard*, 114 Idaho 781, 787, 760 P.2d 1197, 1203 (Ct. App. 1988); *State v. Mason*, 111 Idaho 660, 667, 726 P.2d 772, 779 (Ct. App. 1986).

The district court held that the untimely return of the warrant was ministerial, and Nelson did not present sufficient evidence to show that he did not have a meaningful opportunity to test the blood as a result of the untimely return. The district court held:

> The only new alleged prejudicial effect raised by Nelson on the instant Amended Motion is that "Nelson had no meaningful opportunity to independently test the blood." As set forth more fully above, the Court cannot conclude that Nelson was in fact deprived of a "meaningful opportunity" to test his blood, as Nelson never made such a request. Furthermore, aside from the bare statement that Nelson was deprived of a "meaningful opportunity" to test his blood, Nelson has not cited to any authority or provided any reasoning that would indicate that the

---

[3]    Idaho Code § 19-4415 states in relevant part: "The officer must forthwith return the warrant to the magistrate, and deliver to him a written inventory of the property taken, made publicly or in the presence of the person from whose possession it was taken."

[4]    Idaho Criminal Rule 41(e)(3) states in relevant part:
(3) Return. The officer executing the warrant must promptly return it, together with a copy of the inventory, to a judge in the county where the warrant was issued. The officer may do so by reliable electronic means. The magistrate judge to whom the warrant is returned must attach to the warrant a copy of the return, the inventory, and of all other related papers and must deliver them to the clerk in the county where the warrant was issued or served.

untimely return of the warrant had, or now has, any effect on his failure to request an independent blood test.

Simply put, there is no connection in the evidence between the late return of the warrant and Nelson's ability to obtain independent testing. Nelson was aware that his blood was drawn, and at no point after his blood was drawn did he request independent testing. Nelson has failed to show that he was prejudiced by the late return of the warrant. Accordingly, the district court did not err in finding that Nelson's due process rights were not violated.

**D.      Expert Witness Testimony**

Nelson claims the district court erred in not allowing his expert witness to testify as to certain matters. Nelson presents six areas in which he claims his expert should have been allowed to testify:   (1) ethanol producing organisms; (2) backflow; (3) age of the blood sample; (4) refrigeration of the samples; (5) expiration dates of the test tubes and other materials; and (6) nature of the blood draw. The State responds that Nelson has failed to show error in the district court's disposition of any of these claims. The record supports the district court's analysis.

Rule 702 of the Idaho Rules of Evidence states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

In *Ryan v. Beisner*, 123 Idaho 42, 46, 844 P.2d 24, 28 (Ct. App. 1992) this Court stated:

> [U]nder Rule 702 qualified experts may testify in the form of an opinion only if their specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. Because a verdict cannot rest on speculation or conjecture, expert opinion, which is speculative, conclusory, or unsubstantiated by facts in the record is of no assistance to the jury in rendering its verdict, and therefore is inadmissible as evidence under Rule 702.

(Internal citation omitted.) Admission of expert witness testimony is reviewed under an abuse of discretion standard. *Lunders v. Estate of Synder*, 131 Idaho 689, 697-98, 963 P.2d 372, 380-81 (1998); *State v. Winn*, 121 Idaho 850, 855, 828 P.2d 879, 884 (1992).

"Relevant evidence is admissible unless these rules, or other rules applicable in the courts of this state, provide otherwise. Irrelevant evidence is not admissible." I.R.E. 402. "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (2) the fact is of consequence in determining the action." I.R.E. 401. "Whether a fact is 'of consequence' or material is determined by its relationship to the legal theories

10

presented by the parties." *State v. Ochoa*, 169 Idaho 903, 913, 505 P.3d 689, 699 (2022). "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." I.R.E. 403. Here, the district court generally found that the disputed testimony lacked foundation, lacked relevance, or was speculative.

Nelson claims that the district court should have allowed his expert witness, Ms. Perry, to opine regarding ethanol producing micro-organisms in the blood samples. Nelson argues that since there were only two tubes of the blood sample and Ms. Perry did not have access to those tubes, it limited her ability to properly analyze the blood draw. However, Nelson argues that Ms. Perry was able to watch a video recording of the blood draw and see how the blood was taken. Nelson believes that Ms. Perry should have at least been allowed to present this evidence.

The district court held Ms. Perry had no evidence as to what micro-organisms may have existed in his blood samples as Ms. Perry has neither tested nor inspected the samples. Ms. Perry did not opine that there were micro-organisms that increased the ethanol content in the tubes. Nelson's BAC was lower when it was tested in November 2020, compared to when it was originally tested in February 2019. Ms. Perry's testimony would reflect only that there could be micro-organisms in the blood not that there were. Thus, the district court properly excluded the testimony, including on the basis that the probative value of such testimony would be substantially outweighed by its potential for undue prejudice.

Nelson claims that Ms. Perry should have been allowed to testify about backflow occurring during the blood draw. Nelson argues that because Ms. Perry watched the video of the blood draw, she could discern the tube angle was such that backflow was a "concern." Additionally, Ms. Perry stated that issues with backflow could cause ethanol gain. Nelson believes that since Ms. Perry watched the video, that is sufficient to determine whether there was a backflow issue. The district court held that Ms. Perry had no evidence that backflow occurred during the blood draw. Ms. Perry never tested the blood nor personally inspected the sample. Additionally, there is no evidence in the record to support an opinion regarding backflow affecting the blood sample. The only evidence in the record shows that there was no ethanol gain, but in fact an ethanol reduction. Ms. Perry's testimony that backflow could be a concern does not tend to show that backflow occurred in this

11

situation or that it actually contaminated the sample. Thus, the district court did not err in holding that Ms. Perry's testimony lacked foundation and was speculative.

Nelson claims that Ms. Perry should have been allowed to testify regarding the age of the blood sample. Nelson argues that since the first blood analysis was not considered due to irregularities and that the second sample was not tested until 650 days later, this period is beyond the scope of a scientifically reliable blood sample. However, Ms. Perry had no evidence of the actual effect age had on the sample, and how it interacted with the ethanol content. Moreover, there is no evidence that suggested a 650-day old sample would cause an increase in the ethanol in the sample and such testimony would require the jury to speculate. Nelson fails to show that the district court abused its discretion in prohibiting Ms. Perry's testimony regarding the age of the blood sample.

Nelson claims that the district court erred in precluding Ms. Perry's testimony regarding the lack of refrigeration of the blood samples. Nelson argues that because there are no notes to show that the blood was stored properly while at the Teton County Sheriff's Office, the samples were sent to the State lab without refrigeration, and because the samples were unrefrigerated for a total of ten days and 5.5 hours, the samples were unreliable. The district court ruled that because there is no evidence in the record that the samples were stored improperly, nor any indication of what impact improper storage had on the samples, the testimony would lead to improper jury speculation. As with the other areas of testimony, Ms. Perry's opinions as to what could cause a compromise or change in the blood samples, without evidence of causative effect on Nelson's blood samples, lack foundation, lead to speculation, and were properly precluded.

Nelson claims that Ms. Perry should have been allowed to testify that the blood-alcohol tests are unreliable because the blood collection tubes and needles were expired. The district court held that the expiration dates on the collection tube and other materials are only relevant to the manufacturer's warranty. Furthermore, Nelson provided no evidence as to what the relevance of the needle's expiration dates has on the reliability of Nelson's blood draw. The district court held that since a manufacturer's warranty has no relationship to the legal issues presented in this case, the testimony is irrelevant, and therefore inadmissible. The district court correctly determined that the expiration dates were irrelevant to the accuracy of the blood testing results.

Nelson claims that Ms. Perry should have been allowed to present testimony on the alleged dangerousness of the blood draw. Nelson argues that the nature of the blood draw was relevant to

12

the obstructing law enforcement charge and that it could have led to inaccurate blood test results. The district court held Ms. Perry's testimony would have limited value regarding the charges in this case. Even if Ms. Perry was permitted to testify, she is not an expert on resisting or obstructing law enforcement. Additionally, since the dangerous nature of the blood draw is not at issue in this case, the district court found that the value of Ms. Perry's testimony was substantially outweighed by a risk of confusing the issues and prejudicing the State. Nelson argues that the district court improperly analyzed this testimony under I.R.E. 403.

Again, Nelson presents no evidence nor is there any explanation as to how a forced blood draw can lead to inaccurate test results. While Nelson claims the district court erred in analyzing the I.R.E. 403(b) balancing test, he presents no argument regarding how the district court improperly made its determination. Nelson also fails to demonstrate any relevance the asserted "dangerous" nature of the blood draw has to the blood test results. The district court did not err in excluding Ms. Perry's testimony regarding the blood draw or blood test results.

### E.     Rebuttal Witness

Nelson argues the district court abused its discretion by allowing the State to call a late disclosed rebuttal witness. The last trial witness for Nelson testified that he picked up Nelson from the jail in Rexburg and that he did not observe any vomit or urine on Nelson's clothing, which Deputy Sewell claimed was present. On cross-examination, the witness denied knowing what the jail deputies did with Nelson's clothing, indicating that it seemed like Nelson had the clothing "in a sack or something." On re-direct, the witness testified that he did not smell vomit or urine. At the start of the next trial day, the prosecutor informed the district court that she intended to call a witness to discuss the laundering of Nelson's clothing after booking. Nelson objected. The district court held that the defense raised an issue regarding Nelson's clothing and whether it had been laundered, thus a rebuttal witness for the State was appropriate.

Trial courts have considerable discretion under Idaho Criminal Rule 16(b)(6)[5] to determine whether a particular rebuttal witness should have been disclosed. *State v. Montgomery*, 163 Idaho

---

[5]     Idaho Criminal Rule 16(b)(6) reads in relevant part:
> On written request of the defendant, the prosecuting attorney must furnish to the defendant a written list of the names and addresses of all persons having knowledge of relevant facts who may be called by the state as witnesses at the trial, together with any record of prior felony convictions of any of them, that is within the knowledge of the prosecuting attorney.

40, 45, 408 P.3d 38, 43 (2017). The district court ruled that the testimony by the State's rebuttal witness would be offered for impeachment purposes only. Moreover, as the district court explained, *Montgomery* indicates that the disclosure obligation extends only to witnesses having knowledge of relevant facts. *See id.* at 44, 408 P.3d at 42. The district court noted that the prosecution reasonably may not have been aware of the relevant facts raised by Nelson through the testimony of his last witness.

Nelson argues that the State had known for nearly four years that Nelson had vomit on his clothing. While that may be the case, the district court found that the State would not have known that Nelson's last witness would testify that he did not observe or smell vomit or urine on Nelson's clothing. The fact that the State was aware that there was vomit on Nelson's clothing and that the clothing had been laundered after booking does not mean that the State would be aware that these facts would be placed at issue by Nelson. The State was entitled to the opportunity to present evidence to rebut the unexpected testimony of Nelson's final witness. Moreover, the district court reasonably limited the rebuttal witness to impeachment testimony only. It was not unfair for the district court to allow the rebuttal witness to testify. Nelson has failed to show any error in the district court's decision to allow the State to call a rebuttal witness.

## IV.

## CONCLUSION

Nelson has failed to show error in the district court's denial of his motion to suppress; determination that his Fifth Amendment and due process rights were not violated; exclusion of his expert witness testimony; or decision allowing the State's rebuttal witness to testify. Accordingly, Nelson's judgment of conviction is affirmed.

Judge LORELLO and Judge TRIBE **CONCUR**.